**COLONIAL PENN GROUP, INC., Plaintiff,**

v.

**AMERICAN ASSOCIATION OF RETIRED PERSONS and Olson–Travelworld, Ltd., Defendants.**

Civ. A. No. 83–4911.

United States District Court, E.D. Pennsylvania.

Aug. 8, 1988.

Patrick T. Ryan, John Chesney, Mary E. Kohart, Barbara J. Lipshutz, Philadelphia, Pa., for plaintiff.

Frank Krok, Oak Brook, Ill., James P. Mercurio, Washington, D.C., Deborah F. Cohen, Arthur H. Kahn, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

In this case, the publisher of several magazines targeted to older persons has refused to accept plaintiff's advertising and, instead, has accepted advertising by plaintiff's rivals. This antitrust action against the publisher and plaintiff's rivals followed.

With the parties consent, I am treating the motion of defendant-publisher, American Association of Retired Persons ("AARP"), for sanctions (document # 10) as a motion to dismiss plaintiff's antitrust claims. In response to the motion, plaintiff, Colonial Penn Group, Inc., has identified its antitrust claims as being for: (1) a concerted refusal to deal under section 1 of the Sherman Act, 15 U.S.C. § 1; (2) an attempted monopolization in violation of section 2 of the Sherman Act, 15 U.S.C. § 2; and (3) monopolization in violation of section 2.

Accepting as true the allegations in the complaint, I conclude that plaintiff's antitrust claims as pleaded are sufficient to survive the motion to dismiss. As I will explain more fully, however, a critical inquiry central to each claim is whether advertising in the AARP publications is essential to competition in the relevant markets for plaintiff's products [1] and whether AARP's alleged refusal to permit plaintiff to advertise in its publications has an anti-competitive effect in these markets. These questions require a determination of the relevant markets, defendants' actual or prospective power in the relevant markets, and whether advertising in the AARP publications is vital to competition in a particular market as contrasted with being merely advantageous to plaintiff's business. While plaintiff has *alleged* the proper elements, I am skeptical of its ability to make a *prima facie* evidentiary showing to support these allegations. Accordingly, I will order the parties to complete discovery on the issues identified in this opinion. If appropriate, defendant may then move for summary judgment.

Colonial Penn alleges that AARP, Olson-Travelworld, Inc., and Hartford Insurance Company have conspired to restrain competition for travel services and homeowners and automobile insurance in the relevant markets in this way: AARP publishes three magazines or newsletters ("AARP publications") for its members, who have grown to represent a significant portion of the over-fifty age group. Prior to 1979, AARP only allowed advertising in the publications for products or services that it

---

1. Plaintiff alleges that the relevant products are travel services and homeowners and automobile insurance and that the relevant markets for these products are for persons over the age of fifty. In addition, plaintiff further attempts to limit these markets to AARP members. As plaintiff points out, determination of the relevant market, as there can be only one relevant market for each product, is a fact-specific question focusing on the cross-elasticity of demand for plaintiff's products and their reasonable substitutes. *See, e.g., United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966). Moreover, plaintiff, to show that AARP members comprise a discrete market segment, must show distinguishing characteristics of AARP members from the broader population of persons over the age of fifty. Merely defining the relevant market by the readership of the AARP publications without further distinction is plainly insufficient and an exercise in circular reasoning; i.e., defining a market merely by a publication's readership begs the question of whether that publication is an essential facility. In any event, as this is a fact question, this opinion will speak generically in terms of the "relevant market."

endorsed. During this period, AARP endorsed the services of Colonial Penn or its related companies for travel and homeowners insurance programs designed to meet the needs of AARP members. In 1979, AARP changed its policy and permitted general advertising except for products it still endorsed, which included travel services, as well as homeowners and automobile insurance. Unfortunately, from Colonial Penn's perspective, AARP endorsed the programs of defendant Olson–Travelworld, Inc. and Hartford Insurance Company for those services. Consequently, Colonial Penn argues that defendants' actions and the exclusion of the advertisements for its travel services, homeowners, and automobile insurance programs from the AARP publications violates the antitrust laws. In addition, plaintiff, in an effort to add a horizontal nature to the alleged conspiracy, asserts that AARP competes in the markets for travel and insurance products along with Colonial Penn, Olsen, and Hartford because it receives from Olson and Hartford a percentage of revenues and premiums on the endorsed products.

## A. Section 1 claims

Plaintiff alleges that AARP, Olson, and Hartford have conspired to restrain trade by refusing it access to advertising space in the AARP publications, access which is essential to effective competition in the sale of insurance and travel programs in the relevant markets. Plaintiff argues that its section 1 claim should be analyzed under both a *per se* and a rule of reason approach.

A section 1 action requires proof of four elements: (1) an unlawful, (2) contract, combination, or conspiracy, (3) that produces adverse, anticompetitive effects within the relevant market, and (4) that proximately causes plaintiff's injuries. *E.g., Arnold Pontiac v. GMC,* 786 F.2d 564 (3d Cir.1986). Generally, plaintiff must prove the challenged activity has an anticompetitive effect; however, certain categories of conduct that unjustifiably restrict competition are *per se* unlawful. The most obvious example is price fixing. The Supreme Court has cautioned against a knee-jerk announcement of a *per se* rule prohibiting an activity in favor of a threshold determination of whether the challenged activity is likely to have anticompetitive effects. *Business Electronics v. Sharp Electronics,* —— U.S. ——, 108 S.Ct. 1515, 99 L.Ed.2d 808 (1988); *Northwest Wholesale Stationers v. Pacific Stationery,* 472 U.S. 284, 105 S.Ct. 2613, 86 L.Ed.2d 202 (1985); *see also Seaboard Supply Co. v. Congoleum Corp.,* 770 F.2d 367 (3d Cir. 1985) (*per se* approach only applicable to "classic boycotts," i.e., concerted action designed to exclude a person or group from a market or to accomplish some anticompetitive effect).

In *Northwest Wholesale,* the Court examined the actions of a wholesale cooperative to *expel* members from the cooperative and held that such conduct is not the type that is likely to have an anticompetitive effect unless "the cooperative possesses market power or exclusive access to an element essential to effective competition." *Northwest Wholesale,* 105 S.Ct. at 2621. Here, plaintiff alleges that advertising in the AARP publications is necessary to compete in the relevant markets for travel services and homeowners insurance. Under the so-called "essential facilities doctrine," plaintiff must prove four elements: (1) existence of a facility whose use is essential to market entry; (2) duplication of the facility is not practicable; (3) access to the facility can be provided without interfering with the use by plaintiff's competitor and (4) existence of an agreement between the facility owner and plaintiff's competitor that prevents equitable sharing. *Hecht v. Pro–Football,* 570 F.2d 982, 992–93 (D.C.Cir.1977), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978); *Century Air Freight v. American Airlines,* 597 F.Supp. 564 (S.D.N.Y.),[2] *aff'd,*

---

2. Case law indicates that satisfaction of the essential facilities doctrine leads to *per se* liability under section 1, *see, e.g., Hecht,* 570 F.2d at 993 n. 45, primarily because foreclosure of *essential* access to a market *a fortiorari* leads to an anticompetitive effect. It is clear, however, that for a section 1 claim, there must be proof of a conspiracy to restrain trade; a unilateral deci-

738 F.2d 418 (2d Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 566, 83 L.Ed.2d 507 (1984).

▇ A facility is only essential where it is vital to competitive viability, i.e., competitors can not effectively compete in the relevant market without it. *Associated Press v. United States*, 326 U.S. 1, 65 S.Ct. 1416, 89 L.Ed. 2013 (1945) (competition in certain regions seriously restrained where potential competitors of AP members not permitted to buy news from AP); *Home Placement Service, Inc. v. Providence Journal*, 682 F.2d 274 (1st Cir.1982) (advertisements in classified section of largest regional newspaper essential to compete in the rental referral services market), *cert. denied*, 460 U.S. 1028, 103 S.Ct. 1279, 75 L.Ed.2d 500 (1983). *See generally*, P. Areeda & H. Hovenkamp, *Antitrust Law*, ¶ 736.2b (Supp.1986) (facility is not essential if plaintiff can effectively compete without it). Thus, critical to this inquiry is the definition of the relevant markets, whether advertising in the AARP publications is necessary to compete effectively in those markets, and whether this facility can be duplicated.

▇ Plaintiff alleges that advertising in the AARP publications is the only effective means to market its products to persons over the age of fifty, or the more discrete market of AARP members, and that advertising is necessary to compete in the relevant markets thus raising the essential facilities doctrine. Amended Complaint § 23(c). AARP contends that there are other means of advertising to and reaching the relevant markets and that its refusal to accept plaintiff's advertising has no anticompetitive effect because defendants do not possess any power in these markets. *See generally*, Areeda & Hovenkamp, *supra*, at 736.2d. These arguments, while

appealing, raise factual questions appropriate for a jury to consider, or if no material facts are in dispute, for disposition by a motion for summary judgment.

▇ Plaintiff also seems to allege *per se* liability under a classic group boycott or refusal to deal among competitors theory. As a preliminary matter, it is unlikely that AARP is a competitor of either Olson or Hartford simply by virtue of its agreements to endorse their products and to share a percentage of their revenues or premiums. Moreover, plaintiff has not alleged that AARP was a potential competitor or entrant into either relevant market so that its agreements with Olson and Hartford could have restricted competition by eliminating a competitor from the field. In any event, in the absence of proof of the essential facilities doctrine, defendants' conduct is not the type likely to have an anticompetitive effect, *Northwest Wholesale, supra;* and accordingly, should be judged under the rule of reason under which plaintiff must show an adverse effect on competition in the market. *Garshman v. Universal Resources Holding Inc.*, 824 F.2d 223, 231 (3d Cir.1987).

### B. Section 2 claims

▇ Plaintiff's section 2 claims are a further assertion of the essential facilities doctrine shrouded in monopoly terms rather than those of conspiracy. Plaintiff alleges that AARP has monopolized an essential facility, advertising, and that it has monopolized or attempted to monopolize the relevant markets for travel and insurance products by refusing access to this facility. *See Otter Tail Power Co. v. United States*, 410 U.S. 366, 377–79, 93 S.Ct. 1022, 1029–30, 35 L.Ed.2d 359 (1973); *MCI Communications Corp. v. American Tele-*

sion to deny access does not violate section 1. This is necessarily so since a monopolist may deal with whomever it pleases provided it has no purpose to restrain trade or further its own interests in the relevant market, *e.g., Official Airlines Guides v. FTC*, 630 F.2d 920, 927 (2d Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981), and even where it has an interest, it may establish a business justification for its actions. *See Aspen Skiing Co. v.*

*Aspen Highlands Skiing Corp.*, 472 U.S. 585, 105 S.Ct. 2847, 2858, 86 L.Ed.2d 467 (1985); P. Areeda & H. Hovenkamp, *Antitrust Law*, ¶ 736.2f (Supp.1986). Here, plaintiff alleges both a conspiracy among AARP, Olson, and Hartford and that AARP has an interest in the relevant markets by virtue of its agreements with Olson and Hartford thus raising *per se* liability. Resolution of these questions, however, requires further factual development.

*phone & Telegraph Co.*, 708 F.2d 1081, 1133 (7th Cir.), *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226 (1983). An owner of an essential facility normally has an unfettered right to refuse to deal with anyone except when, as alleged here, it has an economic interest in the relevant market or otherwise limits access for anticompetitive reasons and it has little business justification [3] for its conduct. *See, e.g., Home Placement Service, Inc. v. Provident Journal Co., supra; Official Airlines Guide v. FTC*, 630 F.2d 920 (2d Cir.1980), *cert. denied*, 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981).

 As emphasized by AARP, it is the impact upon competition, not a particular competitor such as plaintiff, that the antitrust laws are designed to protect. *Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Plaintiff alleges that defendants' actions have the necessary adverse impact on competition. I must accept this as true despite my skepticism as to plaintiff's portrayal of AARP's overwhelming power, domination, and control over advertising to the relevant markets. I will, however, order the parties to undertake discovery on the elements identified in this memorandum particularly the relevant markets, whether plaintiff can satisfy the elements of the essential facilities doctrine, and whether AARP possesses a monopoly over advertising to the relevant markets. If the evidence does not support plaintiff's allegations on these facts, summary judgment will be appropriate.

### ORDER

AND NOW, this 8th day of August, 1988, upon consideration of the motion of American Association of Retired Persons for sanctions, which I am treating as a motion to dismiss with the parties' consent, the motion is denied for the reasons set forth in the accompanying memorandum. It is further ordered that a phone conference, initiated by counsel for plaintiff, shall be held on Thursday, August 18, 1988, at 9:30 a.m., to discuss discovery deadlines and plaintiff's motion for expedited discovery.

---

**3.** Professors Areeda and Hovenkamp have theorized that in a monopoly situation, compulsory dealing, while not favored generally, would not ordinarily restrict desirable activities where the integration of two facilities involved a "no benefit" integration. P. Areeda & H. Hovenkamp, *Antitrust Law*, ¶ 1736.(2f) (Supp.1986).

Aptly, they illustrate a "no benefit" integration by "a monopoly newspaper that happens to own one of a town's two department stores and that refuses to accept advertising from the rival store.... Requiring the newspaper to publish the rival's ads ... would not reduce the incentives of [ ] [the monopolist] with respect to newspapers...." *Id.* at p. 528. In their illustration, it is clear that the refusal to permit advertising by the rival store inhibits competition since there are only two stores in the market and the newspaper monopolizes advertising access.