TWIN LABORATORIES,
INC., Appellant,

v.

WEIDER HEALTH & FITNESS, a
corporation, I, Brute Enterprises,
Inc., Appellees.

No. 978, Docket 89–7972.

United States Court of Appeals,
Second Circuit.

Argued March 7, 1990.

Decided April 9, 1990.

David M. Malone, Uniondale, N.Y. (David E. Steckler, Lawrence B. Bernard, and Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., on the brief), for appellant Twin Laboratories, Inc.

Alan R. Malasky, Washington, D.C. (Salvatore A. Romano, Joyce L. Bartoo, Lewis Rose, Jennifer A. Albert, and Arent, Fox, Kintner, Plotkin & Kahn, Washington, D.C.; Anthony L. Tersigni, and Meyers, Tersigni, Lurie, Feldman & Gray, New York City, on the brief), for appellees Weider Health & Fitness and I, Brute Enterprises, Inc.

Before TIMBERS, MESKILL and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Twin Laboratories, Inc. ("Twinlab") appeals from a summary judgment entered August 30, 1989 in the Southern District of New York, Michael B. Mukasey, District Judge, in favor of appellees Weider Health & Fitness ("Weider") and I., Brute Enterprises, Inc. ("Brute").

The final judgment entered August 30, 1989 was based on two prior orders. The first, dated July 21, 1989, granted appellees' motion for summary judgment on all of Twinlab's antitrust claims. The second, dated August 25, 1989, 720 F.Supp. 31 (S.D.N.Y.1989), denied Twinlab's motion for reconsideration of the "essential facilities" antitrust count and granted appellees' motion for summary judgment on Twinlab's pendent claim of prima facie tort under New York law.

On appeal, Twinlab presses claims of error on two antitrust counts—essential facilities and attempted monopolization—and on the prima facie tort count. It asserts that the court misconstrued the applicable law and, in violation of its duty at the summary judgment stage, failed to draw proper factual inferences in its favor.

For the reasons which follow, we affirm the judgment of the district court.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal. Since we are reviewing a summary judgment in favor of appellees, we view the evidence in the light most favorable to Twinlab.

Twinlab and Weider produce competing nutritional supplements for bodybuilders. According to the testimony of Twinlab's expert witness, Dr. Thomas Overstreet, Weider's supplements comprised 10–25% of the market, depending on the market definition, and Twinlab's share of the same market was 5–12%.

Weider, through its wholly-owned subsidiary, Brute, publishes what are universally acknowledged to be the two leading magazines in the bodybuilding field: *Muscle & Fitness* and *Flex*. Twinlab owns *Muscular Development*, a competing magazine, but Twinlab's magazine has a far smaller circulation—less than 10% of the combined circulation of Weider's magazines. For several years, Twinlab used *Muscle & Fitness* and *Flex* as the primary advertising vehicles for its nutritional supplements. In late 1988, however, Weider gave Twinlab notice that it would accept no more advertising for Twinlab's products. From the January 1989 issues through the present, no Twinlab advertising has appeared in either magazine.

Based on Weider's refusal to accept its ads, Twinlab commenced the instant action

in February 1989 by filing a five-count complaint. Three counts were based on § 2 of the Sherman Act, 15 U.S.C. § 2 (1988). They were: (1) monopolization; (2) denial of essential facilities; and (3) attempted monopolization. The complaint also alleged two counts of actionable conduct under New York State law—intentional interference with business relations and prospective economic advantage; and prima facie tort. By its opinion and order dated July 21, 1989, the court granted Weider's motion for summary judgment on all counts except the prima facie tort count. Weider renewed its summary judgment motion on the latter count, and Twinlab cross-moved for reconsideration of the essential facilities count. By its opinion and order dated August 25, 1989, the court granted Weider's motion and denied Twinlab's cross-motion. The judgment dismissing Twinlab's complaint in its entirety was entered August 30.

There followed this appeal during which Twinlab has dropped the counts alleging monopolization and intentional interference with business relations and prospective economic advantage.

## II.

On an appeal from a summary judgment, we review the record de novo to determine whether there are genuine issues of material fact. Fed.R.Civ.P. 56(c). We assess the record in the light most favorable to the non-movant and draw all reasonable inferences in its favor. *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2 Cir.1989). A non-movant who bears the ultimate burden of proof, however, must demonstrate in opposing a summary judgment motion that there is some evidence which would create a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Conclusory allegations will not suffice to create such a genuine issue. There must be more than a "scintilla of evidence", *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986), and more than "some metaphysical doubt as to the material facts." *Matsushita Elec. In-*

*dus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## III.

Turning first to Twinlab's essential facilities count, it asserts that § 2 of the Sherman Act imposes a duty on Weider to make available advertising space in *Muscle & Fitness* and *Flex*. This is so, it claims, because the magazines are facilities essential to competition in the nutritional supplement business; that is, one cannot effectively compete without advertising in these magazines. The policy behind prohibiting denial of an essential facility to a competitor, at least in part, is to prevent a monopolist in a given market (here, bodybuilding magazines) from using its power to inhibit competition in another market (here, nutritional supplements for bodybuilders). *E.g., Flip Side Productions, Inc. v. Jam Productions, Ltd.*, 843 F.2d 1024, 1033 (7 Cir.), cert. denied, 109 S.Ct. 261 (1988); Areeda & Hovenkamp, Antitrust Law ¶ 736.1, at 655 (1988 supp.).

██ Antitrust law, however, does not require one competitor to give another a break just because failing to do so offends notions of fair play. *Cf. Olympia Equipment Leasing Co. v. Western Union Telegraph Co.*, 797 F.2d 370, 375–76 (7 Cir.1986), cert. denied, 480 U.S. 934 (1987). "A particular plaintiff's plight is relevant only as it bears on market effects." Areeda & Hovenkamp, *supra*, ¶ 736.2, at 676. The existence of a facility, even if essential in a technical sense, does not constitute an antitrust violation if the plaintiff cannot allege harm to competition. *E.g., McKenzie v. Mercy Hospital*, 854 F.2d 365, 370 (10 Cir.1988); *Colonial Penn Group, Inc. v. American Ass'n of Retired Persons*, 698 F.Supp. 69, 73 (E.D.Pa.1988).

At the very least, a plaintiff must demonstrate that "duplication of the facility would be economically infeasible" and that "denial of its use inflicts a *severe handicap* on potential [or current] market entrants." *Hecht v. Pro–Football, Inc.*, 570 F.2d 982, 992 (D.C.Cir.1977) (emphasis added), cert. denied, 436 U.S. 956 (1978); *see also MCI Communications Corp. v. American Tel.*

& Tel. Co., 708 F.2d 1081, 1132–33 (7 Cir.) (four-part test for finding essential facilities liability: "(1) control of the essential facility by a monopolist; (2) a competitor's inability practically or reasonably to duplicate the essential facility; (3) the denial of the use of the facility to a competitor; and (4) the feasibility of providing the facility."), *cert. denied*, 464 U.S. 891 (1983).

A leading antitrust commentator would limit the analysis to "facilities that are a natural monopoly, facilities whose duplication is forbidden by law, and perhaps those that are publicly subsidized and thus could not practicably be built privately." Areeda & Hovenkamp, *supra*, ¶ 736.2, at 680–81. Most of the successful essential facility claims fall within the categories stated by this commentator. *E.g., Otter Tail Power Co. v. United States*, 410 U.S. 366 (1973) (electric power lines); *Fishman v. Estate of Wirtz*, 807 F.2d 520 (7 Cir.1987) (basketball arena); *Aspen Highlands Skiing Corp. v. Aspen Skiing Co.*, 738 F.2d 1509 (10 Cir.1984) (mountain), *aff'd on other grounds*, 472 U.S. 585 (1985); *Hecht, supra*, 570 F.2d 982 (football stadium). In cases finding liability in other categories, however, the facility in question was more than dominant; it was effectively the only one in town. *E.g., Lorain Journal Co. v. United States*, 342 U.S. 143 (1951) (ads in monopolist newspaper); *Home Placement Service, Inc. v. Providence Journal Co.*, 682 F.2d 274 (1 Cir.1982) (newspaper's classified listings), *cert. denied*, 460 U.S. 1028 (1983).

Twinlab asserts that sales of Weider's magazines account for 66% of all bodybuilding magazine sales. The district court assumed without deciding that Weider had monopoly power in the magazine market. We also accept that assumption. We nevertheless conclude that Weider's conduct did not constitute an antitrust violation.

We reach that conclusion despite our acceptance of Twinlab's assertion that the district court failed to draw certain factual inferences in its favor. Specifically, the court held that *Muscle & Fitness* and *Flex* could not be essential facilities primarily because Twinlab had the means to turn *Muscular Development* into a strong competitor and had promised to do so in its promotional literature designed to attract advertisers. The court practically transformed those promotional phrases into judicial admissions, and relied on them despite substantial evidence that *Muscular Development* would not compete effectively with Weider's magazines any time in the foreseeable future. Weider itself regards *Muscular Development* as being non-competitive with its magazines. *Muscular Development* apparently has lost money and has not met its circulation goals. If resolution of the essential facilities claim turned solely on whether Twinlab's magazine could compete with Weider's in the foreseeable future, the proper result here would be to remand for trial.

While the question of *Muscular Development*'s competitiveness may genuinely be in dispute, its resolution is not material. A successful "essential facilities" plaintiff must prove that denial of access has caused it "severe handicap." *Hecht, supra*, 570 F.2d at 992; *Driscoll v. City of New York*, 650 F.Supp. 1522, 1529 (S.D.N.Y.1987). At the summary judgment stage, of course, Twinlab need only show that there is a triable question of severe handicap. *Liberty Lobby, supra*, 477 U.S. at 251.

We hold that Twinlab has failed to make such a showing. Its own expert, Dr. Overstreet, stated that, six months after Weider's advertising ban, Twinlab's nutritional supplements were not only continuing to grow more profitable but were continuing to increase their market share relative to Weider's products. While Dr. Overstreet stated that in his opinion Twinlab's growth would have been even more rapid but for the advertising ban, this hardly constitutes a showing of severe handicap.

The testimony of several other witnesses supports our conclusion. Twinlab's president indicated that he expected 1989 to be even better for the company than 1988, which was, in his words, a "banner year". The anticipated expansion was so great

that Twinlab expected to increase its production facilities.

Moreover, an executive of General Nutrition Corp., the largest retailer in the market, predicted that in 1989 Twinlab's sales would overtake Weider's sales in his stores for the first time. He did not indicate that Weider's refusal to accept advertising from Twinlab affected that trend in the first half of 1989.

Our conclusion also is bolstered by an exhibit introduced by Twinlab which shows that only five of the top ten sellers of nutritional supplements advertise in *Muscle & Fitness* and *Flex*. Of the five that do, only Weider itself relies on the magazines for over 50% of its advertising. Twinlab now attempts to discredit that evidence by stating that the survey covered only one month; it fails to state specific facts that demonstrate why the one-month sample is inaccurate.

■ As the word "essential" indicates, a plaintiff must show more than inconvenience, or even some economic loss; he must show that an alternative to the facility is not feasible. *E.g., McKenzie, supra,* 854 F.2d at 370; *Driscoll, supra,* 650 F.Supp. at 1530; Areeda & Hovenkamp, *supra,* ¶ 736.2, at 678–80.

Since Twinlab has failed to make such a showing, we hold that its essential facilities claim fails.

### IV.

■ We turn next to Twinlab's claim of attempted monopolization. To succeed on this claim, Twinlab was required to demonstrate that there were triable issues of fact as to whether Weider: (1) intended to monopolize the nutrition supplement market; (2) engaged in conduct designed to carry out that intent; and (3) had a "dangerous probability" of success. *Times–Picayune Pub. Co. v. United States,* 345 U.S. 594, 626 (1953); *Lorain Journal, supra,* 342 U.S. at 153–55; *Kelco Disposal, Inc. v. Browning–Ferris Indus., Inc.,* 845 F.2d 404, 407 (2 Cir.1988), *aff'd,* 109 S.Ct. 2909 (1989). We need address only the third factor.

A threshold showing for a successful attempted monopolization claim is sufficient market share by the defendant. Twinlab's most favorable evidence established that Weider at best had 25% of the relevant market and probably much closer to 10%. We have held that a 33% market share does not even approach the level required for dangerous probability of success. *Nifty Foods Corp. v. Great Atl. & Pac. Tea Co.,* 614 F.2d 832, 841 (2 Cir.1980). The probability of success is reduced even further where, as here, the remainder of the market is divided among dozens of competitors.

Market share is the primary indicator of the existence of a dangerous probability of success, but not the sole one. *E.g., International Distrib. Centers, Inc. v. Walsh Trucking Co.,* 812 F.2d 786, 792 (2 Cir.), *cert. denied,* 482 U.S. 915 (1987); *Broadway Delivery Corp. v. United Parcel Service of Am., Inc.,* 651 F.2d 122, 128 (2 Cir.), *cert. denied,* 454 U.S. 968 (1981). Twinlab points to *Muscle & Fitness* and *Flex* as the requisite special factors. According to Twinlab, these demonstrate that Weider is dangerously likely to succeed in its attempt to monopolize the supplements market by leveraging its position with the magazines. To raise the point here, however, is merely to rehash the essential facilities argument referred to above. The magazines may give Weider a leg up in the nutritional supplements competition, but they do not create a dangerous probability that Weider will gain a monopoly.

Twinlab's reliance on *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263 (2 Cir.1979), *cert. denied,* 444 U.S. 1093 (1980), is misplaced. As Twinlab points out, we did state in *Berkey Photo* that "it is improper, in the absence of a valid business policy, for a firm with monopoly power in one market to gain a competitive advantage in another by refusing to sell a rival the monopolized goods or services he needs to compete effectively in the second market." *Id.* at 284. Aside from the fact that this statement was dictum (since the plaintiff in *Berkey Photo* failed to allege an applicable violation) and that *Berkey Photo* involved a "tying" claim rather than

one alleging denial of essential facilities, our discussion above precludes application of the cited principle. We found that Twinlab has remained an effective competitor with Weider despite the latter's refusal to accept Twinlab's ads. The quoted passage from *Berkey Photo* requires tangible harm to competition.

We hold that Twinlab's claim of attempted monopolization is without merit.

### V.

 This brings us to Twinlab's claim of prima facie tort. It alleges that Weider's refusal to accept its ads rendered Weider liable for prima facie tort under New York law. The elements for such a tort are: (1) intentional infliction of harm; (2) resulting in special damages; (3) without excuse or justification; (4) by an act that would otherwise be lawful. *E.g., Burns Jackson Miller Summit & Spitzer v. Lindner,* 59 N.Y.2d 314, 332, 451 N.E.2d 459, 467, 464 N.Y.S.2d 712, 720 (1983). The touchstone is "disinterested malevolence", meaning that the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm. *Id.* at 333, 451 N.E.2d at 467–68, 464 N.Y.S.2d at 721. We have held that motives other than disinterested malevolence, "such as profit, self-interest, or business advantage" will defeat a prima facie tort claim. *Marcella v. ARP Films, Inc.,* 778 F.2d 112, 119 (2 Cir.1985) (citing *Squire Records, Inc. v. Vanguard Recording Society, Inc.,* 25 A.D.2d 190, 191–92, 268 N.Y.S.2d 251, 253–54 (1st Dep't 1966), *aff'd,* 19 N.Y.2d 797, 226 N.E.2d 542, 279 N.Y.S.2d 737 (1967)).

We emphasize this principle because there is some dispute over Weider's true motive for rejecting the ads. A Weider executive stated in a deposition that Twinlab's ads were rejected because they were misleading. Twinlab countered that there was substantial evidence indicating that the proffered justification was mere pretext. We agree. Twinlab, however, does not, and could not, suggest that Weider's primary motive was not based on self-interest.

We hold that Twinlab's contention that Weider is liable for prima facie tort is without merit.

### VI.

To summarize:

We hold that Twinlab's antitrust claims, which alleged denial of essential facilities and attempted monopolization, were properly disposed of by summary judgment in favor of appellees. We further hold that Twinlab's claim of prima facie tort under New York law is without merit. Twinlab is not a 90–pound weakling in whose face Weider has kicked sand. Rather, Twinlab is a muscular competitor who is complaining about the competitive process. We affirm the summary judgment in favor of appellees.

Affirmed.