**John L. MARCHICA, Plaintiff,**

v.

**The LONG ISLAND RAIL ROAD, Defendant.**

**No. CV 91–2222 (ADS).**

United States District Court, E.D. New York.

Jan. 26, 1993.

Altier & Barasch, New York City (James P. Ruane, Philip Vogt, of counsel), for plaintiff.

Thomas M. Taranto, Long Island Rail Road Law Dept., Jamaica, NY, by Franklin W. Kronenberg, for defendant.

## MEMORANDUM DECISION AND ORDER

SPATT, District Judge.

According to several recent commentaries, the Acquired Immune Deficiency Syndrome ("AIDS") "carries the potential to be the greatest natural tragedy in human history."[1] For the legal profession, the ramifications of this protean epidemic force those entrusted with applying the law into unexplored territory.

It is in this context that the instant case raises the question, for what appears to be the first time in this Circuit, whether the *fear* of contracting AIDS can form the basis of a cause of action under the Federal Employers' Liability Act ("FELA"). The defendant employer, the Long Island Rail Road, moves for summary judgment contending that there is no basis in law for such a cause of action in the circumstances of this case. The plaintiff, on the other hand, argues that these are precisely the circumstances Congress had in mind when it passed the FELA to protect federal employees in the work environment.

## BACKGROUND

John Marchica ("Marchica" or "the plaintiff") had been working for the Long Island Rail Road ("LIRR") as a structural welder for approximately seven years at the time of the incident alleged in the Complaint. On October 25, 1989, he was assigned by his supervisor to work at the Hempstead Railroad Station. Specifically, Marchica was directed to secure a metal grating above a window shaft in the station in order to prevent homeless people from getting into the trainmen's room. Marchica and his crew were to ensure that the grating could not be opened or raised from the outside, but at the same time could be opened safely and quickly from the inside by the trainmen in case of emergency.

When he arrived at Hempstead Station, Marchica went through the station building and down into the trainmen's room where he observed a pile of debris, approximately three inches deep, at the bottom of the window shaft. The debris consisted of leaves, sticks, broken glass, papers and assorted refuse. According to the plaintiff, there had been a continuing problem with homeless people and drug addicts loitering in the area, and a number of break-ins or attempted break-ins of the trainmen's room had occurred.

It appeared to the plaintiff that it would be necessary to enter the shaft to secure certain pins to the wall to fasten the grating. According to Marchica, railroad regulations required him to clear away the litter before standing in the shaftway. While wearing heavy duty work gloves and clothing, the plaintiff reached into the shaftway with his right hand to clear away part of the pile when he suddenly felt a sharp pain. When he withdrew his hand, he observed a hypodermic needle which had penetrated his glove and was still embedded in his finger.

Marchica immediately removed the needle and for several seconds was in shock. He did not observe whether there was any fluid inside the barrel of the hypodermic. A co-worker retrieved the needle, placed it in a bag, and gave it to the plaintiff who was then taken by another co-worker to the Emergency Room at Winthrop University Hospital. At Winthrop, the plaintiff's wound was cleaned and he was advised to go for an HIV blood test and hepatitis shot and to abstain from all sexual contact for at least six months.

---

[1] William F. Masters, CRISIS: HETEROSEXUAL BEHAVIOR IN THE AGE OF AIDS (1988); Wayne R. Cohen, "An Economic Analysis of the Issues Surrounding AIDS in the Workplace: In the Long Run, the Path of Truth and Reason Cannot Be Diverted," 41 AM.U.L.REV. 1199 (1992); David Margolick, "Legal System is Assailed on AIDS Crisis," NEW YORK TIMES, January 19, 1992, p. 16, col. 1.

That same day, Marchica went to the LIRR Medical Department in Jamaica where he was examined by several doctors. According to the plaintiff, the doctors informed him that what he had been told at Winthrop Hospital was "ridiculous," that he "had nothing to worry about," and that he should "go home and wash [my] hands in warm soapy water and that cures all ills" (Marchica Deposition, pp. 35–36). When Marchica requested the needle from the doctors, he was advised that it was the property of the LIRR. The puncture wound healed after approximately one week.

The plaintiff then went to see his own physician, Dr. Homayoon, who referred him to the Medical Center at Stony Brook for further tests and treatment. Dr. Homayoon saw the plaintiff on several occasions and during one visit, he drew blood for an additional HIV test. In November, 1989 and April, 1990, additional HIV tests were performed.

Based on personal difficulties he was experiencing—which he ascribes to this incident and to the information he was given at Winthrop that it takes six months for the HIV virus to incubate—Marchica saw Dr. Jay Gassman, a psychologist in Lake Ronkonkoma, to whom he stated that he felt as if he were "on a death sentence" (Marchica Deposition, p. 42). The plaintiff complained of sleeping disorder, nightmares, disruption of his family bonds and increased irritability. At one point, he began receiving calls from co-workers saying that they heard he had died of AIDS. Numerous persons would not shake hands with him, and his co-workers, including his supervisor Barry Vernon, told him they were afraid they might catch something from him.

After seeing Marchica for approximately two months, Dr. Gassman referred him to Dr. Raymond Lambert, a Smithtown psychiatrist who prescribed several anti-depressants, including Prozac and Taxmaraphin. Sometime in the first half of 1990, Marchica learned that the second HIV test was negative. In February, 1992, the plaintiff received a letter from the LIRR instructing him to go for a psychological evaluation, which was performed by Dr. Michael Melamed on April 6, 1992.

In June, 1992, Marchica brought this action pursuant to the FELA statute, 45 U.S.C. §§ 51–60 (1988), alleging that the defendant LIRR was negligent in failing to provide him with a safe place to work, specifically in failing to maintain the premises at the Hempstead Railroad Station in a reasonably safe condition, which caused both the physical and psychological injuries he sustained.

Essentially, one part of the plaintiff's claim sought compensation for the physical injury to his right hand, caused by the needle entering his finger. He also makes a claim for the resulting emotional distress attendant upon the physical injury, including a claim of fear of contracting AIDS. In his answer to interrogatory No. 26, the plaintiff listed these latter injuries as posttraumatic stress disorder, depression, anxiety, feelings of detachment or estrangement, restricted range of affect, sleep disturbances, concentration difficulties, irritability, outbursts of anger, psychological deterioration, extremely reduced social contacts, inability to engage in sexual relations with his wife, and diminution of the social relationship with his wife.

## PROCEDURAL SETTING

The defendant Long Island Rail Road moves, pursuant to Fed.R.Civ.P. 56, for partial summary judgment, dismissing certain elements of the alleged injuries and damages claimed by the plaintiff. Specifically, the LIRR asks the Court to "dismiss all claims relating or pertaining to the plaintiff's alleged fear of contracting AIDS (Acquired Immune Deficiency Syndrome) on the grounds that there is no proof that the Plaintiff was exposed to the HIV (Human Immune Deficiency Virus) and the fact that the Plaintiff has been tested negatively for such exposure" (Kronenberg Affidavit, ¶ 2).

The defendant relies upon a series of cases which conclude that an injured party can not recover on a claim of fear of contracting a disease, including AIDS, where

the plaintiff had not shown that he was exposed to the disease (*see, e.g., Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271 [3d Cir.1985]; *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 [E.D.Pa.1990]; *Hare v. State*, 173 A.D.2d 523, 570 N.Y.S.2d 125 [2d Dept.1991]; *Cathcart v. Keene Indus. Insulation*, 324 Pa.Super. 123, 471 A.2d 493 [1984]). The defendant maintains that the plaintiff has alleged no injury "which arose as the result of exposure to the HIV virus itself" (Defendant's Memorandum of Law at p. 14). According to the LIRR, the specific damages in this category are clearly "speculative" and therefore not recoverable.

In opposing the motion, the plaintiff contends that the defendant has a heavy burden to overcome in attempting to obtain summary judgment in this FELA cause of action. Relying upon *Halko v. New Jersey Transit Rail Operations, Inc.*, 677 F.Supp. 135 (S.D.N.Y.1987), the plaintiff argues that railroad workers may assert claims under FELA for a wholly mental injury. In fact, the plaintiff maintains, it has been previously determined that a railroad worker who incurs physical *or* mental injury from unsafe working conditions has a claim under FELA (*see Yawn v. Southern Ry.*, 591 F.2d 312 (5th Cir.), *cert. denied*, 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 [1979]).

The plaintiff also asserts that the standard of care imposed upon a railroad under FELA is substantially higher than that in an ordinary negligence case. Arguing that the railroad owed a higher statutory duty of care to its employee, counsel for the plaintiff states that the railroad breached its duty and that the breach caused the plaintiff's injuries. Counsel also notes that under FELA, the railroad is liable in damages if its failure to provide a safe place to work played any part, no matter how slight, in producing the plaintiff's injury.

## THE GOVERNING LAW

### A. *Summary Judgment Standard*

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 [2d Cir. 1990], and the movant is entitled to judgment as a matter of law (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see also* Fed.R.Civ.P. 56[c]). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion (*see Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 [2d Cir.1990]; *Liscio v. Warren*, 901 F.2d 274, 276 [2d Cir.1990]; *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 [2d Cir.1986], *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 [1987]).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists (*Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990] [quoting Fed.R.Civ.P. 56(e)]; *see National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 [2d Cir.1989]). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party" (*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 [1986]; *see Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir.1990]).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment (*see Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 [2d Cir.1990]). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable (*see Rattner v. Netburn*, 930 F.2d 204 [2d Cir.1991]). Finally, the Court is charged with the function of "issue finding", not "issue resolution" (*Eye Assocs., P.C. v. Incomrx Sys. Ltd. Partnership*, 912 F.2d 23, 27 [2d Cir. 1990]).

### B. *Federal Employer's Liability Act*

The FELA provides in pertinent part as follows:

"Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier. . . ." (45 U.S.C. § 51).

## DISCUSSION

■ Following a review of the authorities, the Court is able to point to various cases which deal with the issues of (1) whether the fear of AIDS constitutes a cause of action under state tort law, and (2) whether a claim for negligent infliction of emotional distress is cognizable under FELA. The Court has been unable to find any case, in any jurisdiction, which has determined that FELA encompasses a cause of action solely involving the fear of contracting AIDS. However, based on the reasoning set forth in the cases that have been decided, this Court now concludes that FELA does encompass a cause of action for fear of contracting the AIDS virus where the basis of the claim is a documented physical injury sustained by the plaintiff.

## A. *Intent of the FELA Provisions*

A primary purpose of FELA "was to eliminate a number of traditional defenses to tort liability and to facilitate recovery in meritorious cases" (*Atchison, Topeka and Santa Fe Ry. v. Buell*, 480 U.S. 557, 561, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 [1987]). The Supreme Court noted in *Buell* that "[w]e have recognized generally that the FELA is a broad remedial statute, and have adopted a 'standard of liberal construction in order to accomplish [Congress'] objects'" (quoting *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1029, 93 L.Ed. 1282 [1949]).

The standard of negligence in FELA cases is significantly different from that found in ordinary negligence actions (*see Rogers v. Missouri Pac. R.R. Co.*, 352 U.S. 500, 509, 77 S.Ct. 443, 450, 1 L.Ed.2d 493 [1957]; *Eaton v. Long Island R.R. Co.*, 398 F.2d 738 [2d Cir.1968]). As the Supreme Court stated in *Rogers*, "[j]udicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death" (352 U.S. at 506–507, 77 S.Ct. at 448–449). It has long been held that under FELA, "the right of the jury to pass upon the question of fault and causality must be most liberally viewed" (*Chicago, Rock Island & Pac. R.R. Co. v. Melcher*, 333 F.2d 996, 999 [8th Cir.1964], quoted in *Eaton v. Long Island Rail Road Company*, 398 F.2d at 741).

As noted in § 51 of the FELA, four requirements must be met under FELA before a plaintiff can recover: (1) the plaintiff must have sustained an injury; (2) the plaintiff's work must involve a carrier engaged in interstate commerce; (3) there must be proof of negligence on the part of the defendant; and (4) the defendant's negligence must have played some role in the injury (45 U.S.C. § 51; *see also Halko v. New Jersey Transit Rail Operations*, 677 F.Supp. 135, 139 [S.D.N.Y.1987]).

In the instant case, it is undisputed that the plaintiff injured a finger of his right hand in the form of a puncture wound. It is also undisputed that the plaintiff's work involved a carrier engaged in interstate commerce. The remaining issues concern proof of the LIRR's alleged negligence and whether such negligence played some role in the plaintiff's injury.

## B. *"Emotional Distress" under FELA*

■ In addition to the physical injury to his right hand, the plaintiff claims a major additional emotional injury in that following the puncture of his finger by the needle, he was forced to live day-to-day with the fear of contracting AIDS, premised upon his knowledge that his initial physical injury was caused by a dirty, discarded hypodermic needle. Essentially, this is a claim for the negligent infliction of emotional distress leading to post-traumatic stress and accompanying psychological dif-

ficulties following a particular type of physical injury.

In reviewing this matter, the Court takes note of the seminal case of *Atchison, Topeka and Santa Fe Ry. v. Buell*, 480 U.S. 557, 561, 107 S.Ct. 1410, 1413, 94 L.Ed.2d 563 (1987), in which the Supreme Court reviewed, as an ancillary matter and without deciding the question, whether purely "emotional injury" was cognizable under FELA. Although the emotional injury asserted in the instant case is premised upon an actual physical injury, the Court finds that *Buell* offers some guidance in this area:

"... whether one can recover for emotional injury might rest on a variety of subtle and intricate distinctions related to the nature of the injury and the character of the tortious activity.... Moreover, some States consider the context and the relationship between the parties significant, placing special emphasis on the workplace. In addition, although many States have now recognized a tort of negligent infliction of emotional distress, they too vary in the degree of objective symptomatology the victim must demonstrate.... In short, the question whether one can recover for emotional injury may not be susceptible to an all-inclusive 'yes' or 'no' answer" (480 U.S. at 568–570, 107 S.Ct. at 1417–18).

The Court notes as an aside that the Supreme Court has denied *certiorari*, with two justices dissenting, in recent cases reaching different results on the question of whether FELA extends to claims based purely on emotional distress (*see Ray v. Consolidated Rail Corp.*, 721 F.Supp. 1017 [N.D.Ill.1989], *aff'd*, 938 F.2d 704 [7th Cir. 1991], *cert. denied*, — U.S. —, 112 S.Ct. 914, 116 L.Ed.2d 813 [1992]; *Carroll v. Consolidated Rail Corp.*, 1991 WL 32859 [E.D.Pa.], *aff'd*, 941 F.2d 1200 [3d Cir. 1991], *cert. denied*, — U.S. —, 112 S.Ct. 916, 116 L.Ed.2d 816 [1992]).

Courts in various circuits have found that a claim for negligent infliction of emotional distress is cognizable under FELA and that plaintiffs can assert claims under FELA for a wholly mental injury (*see, e.g., Taylor v. Burlington N.R.R. Co.*, 787 F.2d 1309 [9th Cir.1986]; *Hagerty v. L & L Marine Services, Inc.*, 788 F.2d 315 [5th Cir.], *modified*, 797 F.2d 256 [5th Cir. 1986]). In both *Taylor* and *Hagerty*, the defendants argued that FELA covered only physical injuries. However, the court in *Taylor* determined that where continuing harassment by the defendant's foreman led to the plaintiff's paranoid schizophrenia, the plaintiff was eligible to assert a claim for wholly mental injury (*Taylor*, 787 F.2d at 1313). Likewise, in *Hagerty*, the court held that a seaman drenched in harmful chemicals during the course of his employment was eligible to assert an emotional injury claim based upon his fear of developing cancer in the future.

Closer to home, the Court looks to *Halko v. New Jersey Transit Rail Operations, Inc.*, 677 F.Supp. 135 (S.D.N.Y.1987), in which the widow of a Conrail employee brought a FELA action alleging that Conrail and the corporation which took over Conrail in New Jersey were negligent in failing to properly hire, train, and supervise its management, which contributed to the employee's suicide. The district court found that the continuing harassment of supervisors could have a causal connection to Halko's suicide. The court observed that "[i]n this case, there certainly is a physical manifestation of the emotional distress ... Moreover, the court is not dealing with a totally emotional injury since there was in fact a physical consequence albeit a delayed reaction" (*id.* at 139). In the instant case, the physical injury clearly formed the foundation of the alleged mental distress.

The LIRR had actual knowledge of the conditions in and around the shaftway at Hempstead Railroad Station, which is the precise reason the plaintiff was dispatched to the area. In fact, Marchica and his crew were sent there to remedy a situation in which certain homeless people and drug addicts congregated, creating damage to the trainmen's room. With knowledge of the conditions prevailing in the area where this incident occurred, the railroad's culpability in terms of the foreseeability of harm

is a matter properly left to a jury's determination (*see Burns v. Penn Cent. Co.*, 519 F.2d 512, 514 [2d Cir.1975], cited in *Halko v. New Jersey Transit Rail Operations, Inc.*, 677 F.Supp. at 141).

■ This Court concludes that the alleged emotional injuries predicated upon a fear of contracting AIDS are recoverable under FELA. The LIRR owed a duty to Marchica to provide him a safe place in which to work. The scope of that duty and the reasonable foreseeability of harm are "essential ingredients of FELA negligence" (*Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 [1963]). "The right of the jury to pass upon the question of fault and causation must be most liberally viewed" (*Johannessen v. Gulf Trading & Transp. Co.*, 633 F.2d 653, 656 [2d Cir.1980]). Therefore, these issues are not subject to determination upon a motion for summary judgment.

## C. *Fear of Contracting AIDS*

Various state courts have addressed the question of whether the fear of contracting AIDS presents a viable cause of action, with differing results (*see, e.g., Carroll v. Sisters of St. Francis Health Services, Inc.*, 1992 WL 276717 [Tenn.App. Oct. 12, 1992] [proof of exposure to AIDS virus is not prerequisite to recovery for emotional distress resulting from fear of contracting AIDS in action alleging that hospital's negligence caused needle prick]; *Ordway v. County of Suffolk*, 583 N.Y.S.2d 1014 [N.Y.Sup.Ct.1992] ["AIDS phobia" may constitute viable psychic injury for purposes of action based on negligent infliction of emotional distress, but surgeon's claim as asserted was insufficient as a matter of law]; *Transamerica Ins. Co. v. Doe*, 840 P.2d 288 [Ariz.App. Div. 1, 1992] [exposure to infected blood is not bodily injury required as prerequisite to compensation for emotional distress based upon plaintiff's alleged exposure to AIDS and fear of contracting the disease]; *Funeral Services By Gregory, Inc. v. Bluefield Community Hospital*, 186 W.Va. 424, 413 S.E.2d 79 [1991] [fear of contracting AIDS in absence of actual exposure to virus not recognized as legally compensable injury]; *Johnson v. West Virginia University Hospitals, Inc.*, 186 W.Va. 648, 413 S.E.2d 889 [1991] [security officer bitten by hospital patient suffering from AIDS entitled to recover for emotional distress based on worry that he would contract the disease]; *Poole v. Alpha Therapeutic Corp.*, 698 F.Supp. 1367 [N.D.Ill.1988] [wife of hemophiliac, who contracted AIDS from defendant's antihemophilic factor and asserted claim for fear of contracting AIDS alleged facts sufficient to arguably place her in zone of danger and to constitute reasonable fear for her safety, but failed to allege physical injury resulting from emotional illness]).

New York state courts have had their share of "AIDS phobia" cases. In *Ordway v. County of Suffolk, supra*, 583 N.Y.S.2d at 1016, where the Supreme Court, Suffolk County found that "AIDS phobia" could constitute a viable psychic injury, the court noted in reviewing the evidence that the plaintiff surgeon had not alleged that the operations he performed on a prisoner with AIDS, unbeknown to him at the time, were in any way remarkable. For example, "there was no broken glove, pierced skin, patient bite, etc., which distinguishes the operations in question from any other" (*id.* at 1016–17).

Several New York cases discuss actual physical injury as a basis for an emotional distress claim. In *Hare v. State*, 173 A.D.2d 523, 570 N.Y.S.2d 125 [2d Dept. 1991], the Appellate Division, Second Department determined that a hospital x-ray technician who was bitten by an unrestrained and allegedly AIDS-infected prisoner could not recover on a claim of emotional distress, especially where the prisoner's AIDS status was "rumor" at best. By contrast, the court in *Castro v. New York Life Ins. Co.*, 153 Misc.2d 1, 588 N.Y.S.2d 695 (N.Y.Sup.Ct.1991), held that a cleaning worker who was stuck with a used hypodermic needle while transferring garbage from a waste container in the New York Life offices had a viable cause of action for fear of contracting AIDS.

In addition to immediate treatment, the plaintiff in *Castro* was seen in an outpatient clinic every month for testing and received regular treatment from a psychiatrist. Declining to dismiss the complaint for failure to state a cause of action, the court stated the following:

> "[g]iven the massive informational campaign waged by federal, state and local health officials over the last few years in an effort to educate the public about this dreadful disease, any reasonable person exposed to this information who is stuck by a used and discarded hypodermic needle and syringe from which blood was apparently drawn could develop a fear of contracting AIDS" (*id.* 588 N.Y.S.2d at 698).

As one commentator closely connected to the *Castro* case subsequently stated: "Unlike *Hare*, the identity of the contaminator in Castro is unknown, making the fear of contraction more reasonable ... Therefore, based upon the reasonableness of the fear, the breach of the duty, evidence of a specific incident and an actual physical injury, the facts in Castro arguably would support a claim even under the more narrow approaches taken by the lower courts" (Harry H. Lipsig, "AIDS Phobia and Negligent Infliction of Emotional Distress," N.Y.L.J., March 26, 1992, at 3, 4).[2]

Although there are no FELA cases directly discussing emotional distress in the context of fear of contracting AIDS, several FELA cases offer some guidance to the Court. In *Masiello v. Metro–North Commuter R.R.*, 748 F.Supp. 199 (S.D.N.Y. 1990), a female employee's allegations that the railroad had negligently failed to protect her from the sexual harassment of co-workers, with the result that she developed an ulcer and emotional injuries, were held to be sufficient to state a cause of action for negligent infliction of emotional distress.

In *Reese v. CSX Transportation, Inc.*, 1992 WL 119163 (W.D.N.Y.1992), a re-assigned communications worker advised his supervisor that he felt he did not have sufficient experience to operate tower house switches which controlled traffic on approximately nine sets of railroad tracks. After experiencing diarrhea, insomnia, shaking, nausea, vomiting, confusion, depression and anxiety, the plaintiff called in sick on the fourth day. Although the defendant returned to work the following Monday, he wrote a letter several days later disqualifying himself from the job and was eventually admitted through the emergency room to a hospital psychiatric unit. Responding to a claim for damages under FELA, the district court found that the emotional injury was cognizable under FELA since it was also accompanied by a causally related physical manifestation.

In *Masiello* and *Reese*, the courts determined that FELA applied to circumstances where claims of purely emotional distress were accompanied by physical manifestations. This Court has no doubt that FELA applies to the actual, physical injury sustained by John Marchica. Recognizing the broad remedial purpose of FELA and its liberal construction as enunciated in *Urie v. Thompson*, 337 U.S. 163, 180, 69 S.Ct. 1018, 1029, 93 L.Ed. 1282 (1949), this Court finds that FELA also encompasses a cause of action for fear of contracting AIDS in the circumstances of the instant case. Transmission of AIDS by intravenous drug use accounted for 25 percent of all AIDS cases in the United States by 1986 (Gerald H. Friedland & Robert S. Klein, "Transmission of the Human Immunodeficiency Virus," 317 NEW ENG.J.MED. 1125, 1127 [1987]). Whether the plaintiff's fear was reasonable, at least through the period of time when he received his last negative result from testing, is a question for the finder of fact and will not be determined on papers submitted in a motion for summary judgment.

The Court finds that the cases cited by the defendant LIRR are distinguishable from the instant case. Neither *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Pa.1990) nor *Wisniewski v. Johns–Manville Corp.*, 759 F.2d 271 (3d Cir.1985) were commenced under FELA. *Burk* was a paramedic who brought a products liabili-

---

**2.** Mr. Lipsig's firm represented the plaintiff Castro in this case.

ty action under Pennsylvania state law against the manufacturer of a container for used syringes, on which the plaintiff was stuck by a protruding needle. The plaintiff could not prove that he was actually exposed to the AIDS virus because he could not show that the needle had been used by an AIDS patient and the cause of action was dismissed (*Burk*, 747 F.Supp. at 286).

The plaintiff's reliance on *Wisniewski* is also misplaced. The action by the plaintiff wives and children whose husbands allegedly carried asbestos dust into their homes through clothing and tools was dismissed because the plaintiffs did not suffer an actual physical injury upon which emotional distress followed (*Wisniewski*, 759 F.2d at 272). The remaining cases cited by the defendant deal with claims of *intentional* infliction of emotional distress—a claim which is not asserted by Marchica.

■ Whether Marchica's psychological history since this incident constitutes compensable damage in addition to the physical harm is a material question of fact for the jury (*see Dobelle v. National R.R. Passenger Corp.*, 628 F.Supp. 1518, 1527 [S.D.N.Y.1986]). In this type of case, the finder of fact may conclude that the plaintiff has sustained sufficient physical injury to support an award for mental anguish, even if subsequent medical diagnosis fails to reveal any other physical injury, and even though there is no proof at this time that the plaintiff has, in fact, contracted AIDS. Summary judgment in these circumstances is clearly inappropriate.

The Court finds that (1) FELA covers both the physical and emotional injuries alleged to have been inflicted upon the plaintiff; (2) a jury could find that the LIRR acted negligently toward Marchica; and (3) a jury could find that the LIRR's negligence played a role in both injuries. In light of these findings, the defendant's motion for summary judgment is denied.

## CONCLUSION

In light of the foregoing, the motion by the defendant LIRR, pursuant to Fed. R.Civ.P. 56, for partial summary judgment, dismissing all claims relating or pertaining to the plaintiff's alleged fear of contracting AIDS (Acquired Immune Deficiency Syndrome), is denied. This case is set down for the selection of a jury on March 1, 1993, at 9:30 a.m. in Courtroom "A" of the Uniondale Courthouse. Further, the parties are advised that the case is set down for a status conference on February 10, 1993, at 9 a.m.

SO ORDERED.