SPRUCE OIL CORPORATION, Plaintiff,

v.

ARCHER–DANIELS–MIDLAND COMPANY, Defendant.

No. 92–C–1071.

United States District Court, D. Colorado.

Dec. 9, 1994.

Richard Paul Slivka, Vinton, Slivka & Panasci, Gilbert R. Egle, Elrod, Katz, Preeo, Look, Moison & Silverman, Denver, CO, for plaintiff.

John D. Shively, Daniel F. Warden, Faegre & Benson, Denver, CO, John D. French, Faegre & Benson, Minneapolis, MN, for defendant.

## MEMORANDUM OPINION AND ORDER

CARRIGAN, District Judge.

Plaintiff Spruce Oil Corporation (Spruce), a Colorado corporation with its principal place of business in Arkansas, commenced this action against Archer–Daniels–Midland Company (ADM), a Delaware corporation with its principal place of business in Illinois, asserting antitrust claims under section 2 of the Sherman Act, 15 U.S.C. § 2 (first claim) and its state law equivalent, Colo.Rev.Stat. § 6–4–101 *et seq.* (second claim). On August 15, 1994, a jury trial on these claims began. On August 31, 1994, the jury returned verdicts in favor of ADM.

Spruce has moved for a new trial pursuant to Fed.R.Civ.P. 59. ADM has responded by opposing that motion. The issues have been fully briefed and oral argument would not be helpful. Jurisdiction is founded upon 28 U.S.C. §§ 1331, 1332, and 1337.

During trial, Spruce tendered the following monopoly leveraging instruction:

> Spruce also alleges that ADM used its monopoly power in the Colorado bulk ethanol market to obtain a competitive advantage in other states. If a monopolist uses its monopoly power in one geographic market to gain a competitive advantage in another geographic market, this is unlawful monopolization within the meaning of the Sherman Act.
>
> In order to prevail on this claim, Spruce must prove each of the following elements by a preponderance of the evidence:
>
> (1) That the Colorado bulk ethanol market was a relevant market, as I have defined that term;
>
> (2) That ADM had monopoly power in that market;
>
> (3) That ADM willfully used that power to foreclose competition, gain a competitive advantage, or destroy a competitor in a different or separate market; and
>
> (4) That Spruce was injured in its business or property because of ADM's conduct.

The court rejected Spruce's tendered instruction on the ground that it incorrectly stated the law. Spruce contends that the court should have instructed the jury on its monopoly leveraging theory, and therefore it is entitled to a new trial.

Section 2 of the Sherman Act provides that it is unlawful to "monopolize or attempt to monopolize, or combine or conspire ... to monopolize any part" of interstate commerce.

15 U.S.C. § 2. The Second Circuit has developed a theory of liability under section 2—monopoly leveraging—that makes actionable the use of monopoly power attained in one market to gain a competitive advantage in another market, even if there has not been an attempt to monopolize the second market. *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 276 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980).

The Third and Ninth Circuits, however, have rejected the Second Circuit's monopoly leveraging theory. The Third Circuit has held that, because the theory proscribes conduct that falls short of threatened monopoly, it "does violence to the text of the Sherman Act." *Fineman v. Armstrong World Indus.,* 980 F.2d 171, 205 (3d Cir.1992). The Ninth Circuit has agreed that the theory lacks any statutory basis, and has declared: "Unless the monopolist uses its power in the first market to acquire and maintain a monopoly in the second market, or attempts to do so, there is no Section 2 violation." *Alaska Airlines v. United Airlines,* 948 F.2d 536, 548 (9th Cir.1991). The Tenth Circuit has not addressed the question.

A recent United States Supreme Court decision supports the reasoning of the Third and Ninth Circuits. In *Spectrum Sports, Inc. v. McQuillan,* —— U.S. ——, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993), the Court stated that section 2 of the Sherman Act "makes the conduct of a single firm unlawful *only* when it actually monopolizes or dangerously threatens to do so." *Id.* at ——, 113 S.Ct. at 892 (emphasis added) (citing *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 767, 104 S.Ct. 2731, 2739–40, 81 L.Ed.2d 628 (1984)). Even the Second Circuit has retreated from *Berkey Photo,* calling its articulation of the monopoly leveraging theory "dictum." *Twin Labs., Inc. v. Weider Health & Fitness,* 900 F.2d 566, 570 (2d Cir.1990).

 In light of the foregoing, this court concluded during the trial of this case, and remains persuaded, that a plaintiff asserting a monopoly leveraging claim must prove "threatened or actual monopoly in the leveraged market."[1] Because Spruce's tendered instruction does not require proof of threatened or actual monopoly in the leveraged market, it was properly rejected.

Accordingly, IT IS ORDERED that Spruce's motion for a new trial based on the court's failure to instruct the jury on its monopoly leveraging theory is denied.

---

[1] To establish threatened monopoly, an antitrust plaintiff must demonstrate that the defendant had a "dangerous probability" of achieving monopoly power. *See, e.g., Shoppin' Bag of Pueblo, Inc. v. Dillon Cos.,* 783 F.2d 159, 161 (10th Cir.1986). There was no proof at trial of a "dangerous probability" that ADM would monopolize a leveraged market.