**Bessie Mae CARROLL and Henry O. Carroll, Plaintiffs–Appellees,**

v.

**The SISTERS OF SAINT FRANCIS HEALTH SERVICES, INC., d/b/a St. Joseph Hospital, Defendant–Appellant.**

Supreme Court of Tennessee, at Memphis.

Dec. 20, 1993.

Terese B. Deboo, Norwood, Phillips & Deboo, Memphis, for plaintiffs-appellees.

Robert L. Green, Neely, Green, Fargarson & Brooke, Memphis, for defendant-appellants.

Patricia Head Moskal, Boult, Cummings, Conners, & Berry, Nashville, Laura A. Foggan, Stephen D. Goldman, Wiley, Rein & Fielding, Washington, DC, for amicus curiae American Ins. Ass'n.

## OPINION

DROWOTA, Justice.

The Sisters of Saint Francis Health Services Inc. (St. Joseph Hospital), filed an application for permission to appeal from the Court of Appeals' reversal of the summary judgment entered in its favor in the plaintiff Bessie Carroll's action for negligent infliction of emotional distress. We granted St. Joseph's application to consider an important issue of first impression: whether a plaintiff may recover damages for negligent infliction of emotional distress, based on the fear of contracting the Acquired Immunodeficiency Syndrome (AIDS), without presenting evidence that he or she was actually exposed to the human immunodeficiency virus (HIV or the AIDS virus).[1] We decide this question in the negative, and therefore reverse the judgment of the Court of Appeals.

## FACTS

On June 21, 1988, Bessie Carroll visited her terminally ill sister, who was a patient in the intensive care unit of St. Joseph Hospital in Memphis, Tennessee. After applying lotion to her sister's skin, Carroll washed her hands in a nearby wash basin and then attempted to extract a paper towel from a container located on the wall to the right of the wash basin. After unsuccessfully attempting to withdraw a towel from the bottom of the container, Carroll lifted the top of the container and reached inside, where three of her fingers were pricked by sharp objects. Carroll reported the incident to a nurse in the hallway outside the intensive care unit, and the nurse informed her that the container was not a paper towel holder, but was a receptacle for "contaminated needles." Carroll, a sixty-five year old domestic worker with a fifth-grade education, immediately became fearful of contracting AIDS from the punctures.

Carroll was then taken by hospital personnel to the emergency room, where a blood sample was taken to determine if she had been exposed to any diseases, including HIV, as a result of the incident. The next day, Carroll was examined by Dr. John Weems, an epidemiologist who served as the infectious disease control doctor at St. Joseph. Dr. Weems advised Carroll to report the incident to her family doctor to obtain follow-up treatment for her injuries.

The HIV test administered to Carroll in the St. Joseph's emergency room did not reveal the presence of any HIV antibodies. Carroll has been retested on five occasions over a three-year period since the incident,

1. This issue has recently attracted a great deal of attention in the popular legal media. *See e.g.,* Brian R. Graves, *In Fear of AIDS Cases, Proof is Key Element,* Nat'l Law J., Apr. 26, 1993, at 27– 33; Martha A. Churchill, *Medical Monitoring and Cancerphobia—The Rise of Fear Lawsuits,* For the Defense, Aug. 1993, at 2–9.

and none of the tests has revealed any HIV antibodies.[2]

On June 7, 1989, Carroll instituted an action against St. Joseph based on, *inter alia*, a theory of negligent infliction of emotional distress.[3] In her complaint, Carroll alleged that St. Joseph was negligent in placing the contaminated needle container, which resembled a paper towel dispenser, closer to the wash basin than the actual paper towel dispenser; Carroll further alleged that St. Joseph was negligent in failing to attach appropriate warning labels to the needle container. Carroll averred that because of the incident, "[she] suffered from great anxiety, fear and emotional distress that she may contract AIDS," and that this fear "has caused her the loss of enjoyment of life."

St. Joseph moved for a summary judgment on the negligent infliction of emotional distress claim, arguing that because Carroll admitted that she could not prove that she had been actually exposed to HIV as a result of the incident, the claim was insufficient as a matter of law. The trial court agreed and granted St. Joseph's motion for partial summary judgment; Carroll filed an interlocutory appeal pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

The Court of Appeals, with one judge dissenting, reversed the judgment of the trial court. The majority based its decision on *Laxton v. Orkin Exterminating Co.*, 639 S.W.2d 431 (Tenn.1982), a case in which we held that the plaintiffs could recover damages for emotional distress after ingesting water which had been polluted with a toxic chemical by an exterminating company. The majority construed *Laxton* to set a general standard of "reasonableness" of the plaintiff's fear; it explicitly eschewed the notion that evidence of an actual exposure to a disease-causing agent was a prerequisite to recovery under Tennessee law. Judge Highers dissented; he believed that the majority had misconstrued *Laxton*, and that proof of an

actual exposure to the potentially harmful agent was required in order to submit the question of the reasonableness of the plaintiff's fear to the jury.

## ANALYSIS

A resolution of this issue initially requires an examination of three Tennessee cases concerning emotional damages which are relied upon by both parties. Two of the cases are state court decisions—*Laxton, supra,* and *Gamble v. Mintz,* Shelby Law No. 77, 1991 WL 7804 (Tenn.App. Jan. 30, 1991), which was decided by the Western Section of the Court of Appeals. The third case, *Sterling v. Velsicol Chemical Co.,* 855 F.2d 1188 (6th Cir.1988), involves an interpretation of relevant Tennessee law by the Sixth Circuit Court of Appeals. Because this Court has not addressed the issue of emotional damages in the context of AIDS, we will also look for guidance to other jurisdictions, both federal and state, that have considered this issue.

*Laxton,* a 1982 decision authored by Justice Cooper, is the leading case in Tennessee concerning emotional damages. In *Laxton,* the plaintiffs hired Orkin Exterminating Company to treat their house for termites, and an Orkin employee sprayed the ground surrounding the plaintiffs' house with chlordane, a toxic chemical and potential carcinogen. During the treatment, some of the chlordane seeped into the plaintiffs' water supply—a spring located a short distance from the house. Soon thereafter, the Laxtons noticed that the water had a foul odor and taste, and they notified the State Department of Water Control. The Department tested the water, found it to be contaminated, and although it did not specifically inform the Laxtons that chlordane was the contaminant, it did advise the Laxtons to stop using the water. The Department conducted more tests after which it determined that the water's chlordane content was within acceptable

---

**2.** Carroll was tested on June 21, 1988, June 24, 1988, July 6, 1988, September 21, 1988, December 5, 1988, and March 22, 1991.

**3.** Carroll's complaint also included a claim of outrageous conduct based on St. Joseph's alleged failure to take appropriate measures to alleviate

Carroll's fear. The Court of Appeals affirmed the trial court's dismissal of this claim, holding that the record did not reveal that St. Joseph's conduct was outrageous. We agree with this holding.

limits; the Department then advised the plaintiffs to resume using the water.

Eight months later, however, the plaintiffs again noticed that the water had a foul smell and taste. The Department conducted another series of tests and determined that the water's chlordane content exceeded acceptable limits. The Department advised the plaintiffs to cease using the water, and this time the Department informed them that the water contained the toxic chemical chlordane.

The Laxtons became worried about the potential deleterious effects of chlordane on themselves and their infant children, and each family member underwent testing to determine if the chemical had adversely affected their health. Although all the tests results were negative, the Laxtons brought an action against Orkin for the emotional distress caused by the defendant's negligence. The jury returned a verdict in the plaintiffs' favor, but the Court of Appeals reversed, citing a 1917 case, *Memphis St. Ry. Co. v. Bernstein*, 137 Tenn. 637, 194 S.W. 902, for the proposition that a plaintiff could not recover for emotional injuries unless those injuries manifested themselves in a physical injury or physical pain.

This Court reversed the judgment of the Court of Appeals and reinstated the jury verdict. After noting several post-*Bernstein* cases in which the "physical injury" required to support an award of emotional damages had been negligible, we held that the act of drinking the contaminated water itself constituted the requisite physical injury. We stated:

> In our opinion, in addition to cases where it has previously been allowed, recovery for the negligent infliction of mental anguish should be allowed in cases where, as a result of the defendant's negligence, a plaintiff has ingested an indefinite amount of a harmful substance. In such cases the finder of fact may conclude that the plaintiff has sustained sufficient physical injury to support an award for mental anguish even if subsequent medical diagnosis fails to reveal any other physical injury.

639 S.W.2d at 434.

Here it is undisputed that the plaintiffs ingested polluted water when the defendants negligently permitted dangerous chemicals to infiltrate plaintiffs' household water supply ... The chemical which polluted their spring was a possible carcinogen. Even though the tests proved negative, in our opinion a jury could find sufficient 'injury' to these plaintiffs to justify a recovery for their natural concern and anxiety for the welfare of themselves and their infant children.

*Id.*

The second case relied upon by the parties, *Gamble v. Mintz,* involved a medical malpractice action. In *Gamble,* Amanda Gamble went to see Dr. Philip Mintz with complaints of anorexia and related maladies. Amanda informed Dr. Mintz at the beginning of the visit that she was attempting to become pregnant, and Dr. Mintz ordered a pregnancy test to be performed, which was returned a week later with negative results. During the visit, Dr. Mintz prescribed the drug Xanax to ameliorate Amanda's anxiety; Xanax was, according to the plaintiffs, potentially harmful to a developing fetus. Two months later, Amanda was admitted to the hospital for similar problems, and she was given more medication and was subjected to a radiological examination. Both the medication and the radiological treatment were, according to the plaintiffs, potentially harmful to a fetus. Amanda, however, was not given another pregnancy test prior to her admittance to the hospital, despite her request that one be performed. A pregnancy test administered by another doctor two weeks after her hospital stay revealed that Amanda was pregnant and had been pregnant at the time of her hospital stay.

Because they were fearful that the medication and the radiological treatment might have seriously harmed the fetus, Amanda and her husband decided to have an abortion performed. The Gambles subsequently brought an action against Dr. Mintz for the emotional damage caused by his negligent administration of the potentially harmful treatment. The trial court granted a summary judgment in favor of Dr. Mintz, but the Court of Appeals reversed the judgment and remanded the case for a trial on the merits.

The Court of Appeals in *Gamble* began its analysis by citing *Laxton* for the proposition that an action for negligent infliction of emotional distress may be maintained as long as the plaintiff has incurred some type of underlying physical injury. The Court then turned to the question of whether the plaintiffs had presented sufficient evidence of causation to submit the issue to the jury. The Court held that although expert testimony is normally required to establish causation in medical malpractice cases, the plaintiffs were excused from this requirement because the cause of the injury was within the common knowledge of laymen. The Court stated:

> We do not believe that it takes a great deal of imagination to find that parents could sustain mental suffering because of reasonable fear and apprehension of the harmful effects to their unborn child because of exposure to contraindicated drugs and diagnostic procedures. At the very least, the question of whether mental anguish and distress is sustained in the circumstances such as in the case at bar, must depend upon the facts of each case and upon the reasonableness or unreasonableness of the plaintiff's conduct. These are factual questions which must be determined by the trier of fact.

*Gamble* at 8.

The third case cited by both parties, *Sterling v. Velsicol Chemical Co., supra,* concerned a class action brought by property owners against a chemical company for the negligent disposal of hazardous waste. The property owners alleged that the company's disposal practices had caused their wells to become contaminated, and they sought damages for, *inter alia,* the emotional distress occasioned by the fear of contracting cancer or other diseases as a result of drinking the contaminated water. The Sixth Circuit upheld the district court's award of damages to five representative plaintiffs on this claim. The Court, after defining the plaintiffs' claim as one "which results from fear that an already existent injury will lead to the future onset of an as yet unrealized disease," cited *Laxton* for the proposition that emotional

damages based on the fear of contracting a disease are recoverable in Tennessee. The Court summarized *Laxton* as follows:

> As a result of ingesting the contaminated water for over a period of eight months, the plaintiffs worried about their health and the health of their children. The court awarded the plaintiffs $6,000 each for their mental suffering resulting from their reasonable apprehension of the harmful effects to their own and their children's health due to consuming or otherwise using the contaminated water.

855 F.2d at 1206.

Applying *Laxton* to the plaintiffs' claims, the Court concluded:

> In the instant case, the plaintiff' fear clearly constitutes a present injury. Each plaintiff produced evidence that they personally suffered from a reasonable fear of contracting cancer or some other disease in the future as a result of ingesting Velsicol's chemicals.

*Id.*

The parties construe these cases in substantially different ways. St. Joseph argues that *Laxton, Gamble,* and *Velsicol* establish that a plaintiff must present evidence of actual exposure to a disease-causing agent in order to make out a prima facie case for emotional damage based on fear of contracting a disease and that the Court of Appeals, therefore, erred in construing *Laxton* to allow the question to be submitted to the jury without such a showing. St. Joseph points out that the plaintiffs in all three cases suffered a direct exposure to a harmful agent: the *Laxton* plaintiffs ingested water contaminated by the defendant's chemicals; one of the *Gamble* plaintiffs was exposed to potentially harmful drugs and radiological treatment; and the *Sterling* plaintiffs ingested water contaminated by the defendant's hazardous waste. St. Joseph argues more generally that other types of "fear" claims, such as "cancerphobia," have universally required an actual exposure to the disease-causing agent.[4] Finally, St. Joseph urges that re-

---

4. St. Joseph cites, among others, *Herber v. Johns–Manville Corp.,* 785 F.2d 79 (3rd Cir. 1986), and *Hagerty v. L & L Marine Services, Inc.,*

quiring an actual exposure to HIV in order to recover for fear of contracting AIDS would bring Tennessee into line with the view of the majority of jurisdictions that have considered this issue, including West Virginia,[5] Pennsylvania,[6] Idaho[7] and New York[8].

Carroll, on the other hand, contends that the Court of Appeals was correct in construing *Laxton* as establishing a standard of reasonableness for claims of this type. Carroll essentially argues that whether the plaintiff has actually been exposed to a disease-causing agent is in a sense an arbitrary consideration, because, she says, the crucial question in these cases is whether the plaintiff's fear is supported by sufficient indicia of genuineness and reasonableness. She further argues that requiring the plaintiff to present evidence of an actual exposure serves to unfairly punish the plaintiff when the defendant has disposed of the only means of proving the exposure, such as happened in this case. She cites decisions from Maryland,[9] California,[10] and New York[11] that have utilized the reasonableness standard in these types of cases.

This issue has resulted in a split of authority, with a slight majority of jurisdictions adhering to the view espoused by St. Joseph. The clearest example of this view is *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Pa.1990). In *Burk*, a paramedic pricked his finger on a needle protruding from a container used to dispose of used syringes. The paramedic brought an action against the manufacturer of the container for emotional damages based on his fear of contracting AIDS. Although the plaintiff's HIV tests were negative, he was able to show that several patients suffering from AIDS had been seen on the floor of the hospital on which he had been working on the date he sustained the injury.

The district court granted a summary judgment in favor of the defendant, holding that unless the plaintiff could prove that the needle which had stuck his finger had actually been used on an AIDS patient, he could not recover for emotional distress. The Court explained that:

> Plaintiff's position is in marked contrast to the other situations where recovery for fear of contracting a disease has been held compensable, in that plaintiff in this case has been unable to demonstrate an exposure to a disease causing agent. The cases which have allowed recovery for fear of disease have done so when the plaintiffs were faced only with the question of whether they would contract the disease in the future; the plaintiff in the instant case faces the additional question of whether he has been exposed to the AIDS virus in the first place. The court has been unable to locate a single case from any jurisdiction, which has permitted recovery for emotional distress arising out of fear of contracting disease when the plaintiff cannot prove exposure to the agent which has the potential to cause the disease.

747 F.Supp. at 287.

Another example of the "actual exposure" view is the West Virginia Supreme Court's

788 F.2d 315 (5th Cir.1986) as examples of this requirement.

**5.** See *Johnson v. W.Va. University Hospitals*, 186 W.Va. 648, 413 S.E.2d 889 (1991), and *Funeral Serv. by Gregory v. Bluefield Hospital*, 186 W.Va. 424, 413 S.E.2d 79 (1991); these cases are discussed *infra* at p. 590–591.

**6.** See *Burk v. Sage Products, Inc.*, 747 F.Supp. 285 (E.D.Pa.1990), discussed *infra* at p. 590.

**7.** See *Neal v. Neal*, No. 19086, 1993 WL 228394, at 8–13 (Idaho Ct.App. June 29, 1993).

**8.** See *Ordway v. County of Suffolk*, 154 Misc.2d 269, 583 N.Y.S.2d 1014 (Sup.1992), *Hare v. State*, 173 A.D.2d 523, 570 N.Y.S.2d 125 (1991), and *Doe v. Doe*, 136 Misc.2d 1015, 519 N.Y.S.2d 595 (Sup.1987), discussed *infra* at note 15. But see *Castro v. New York Life Ins. Co.*, 153 Misc.2d 1, 588 N.Y.S.2d 695 (Sup.1991), also discussed in note 15.

**9.** See *Faya v. Almaraz*, 329 Md. 435, 620 A.2d 327 (1993), discussed *infra* at 591–592.

**10.** See *Kerins v. Hartley*, 17 Cal.App. 4th 713, 21 Cal.Rptr.2d 621 (1993).

**11.** See *Marchica v. Long Island R.R.*, 810 F.Supp. 445 (E.D.N.Y.1993), discussed *infra* at note 14, and *Castro v. New York Life Ins. Co.*, 153 Misc.2d 1, 588 N.Y.S.2d 695 (Sup.1991), discussed *infra* at note 15.

decision in *Johnson v. W.Va. University Hospitals,* 186 W.Va. 648, 413 S.E.2d 889 (1991). In *Johnson,* a hospital security guard was summoned to restrain an unruly patient. As the guard attempted to put the patient into his bed, the patient bit himself on the arm, thereby drawing blood into his mouth, and then bit the guard on the forearm. Later, as the guard was washing out the wound, a paramedic informed him that the patient had AIDS. Although the guard subsequently tested negatively for AIDS, he brought an action against the Hospital for his emotional damages from the incident. The plaintiff received a jury verdict in his favor.

The West Virginia Supreme Court affirmed the judgment. The Court first analogized the situation to cases involving fear of cancer; it noted that those cases required the plaintiff's fear to be reasonable in order to recover. Then, after discussing *Burk* and two New York cases—*Doe v. Doe,* 136 Misc.2d 1015, 519 N.Y.S.2d 595 (Sup.Ct. 1987), and *Hare v. State,* 173 A.D.2d 523, 570 N.Y.S.2d 125 (1991)—the Court stated:

> It is evident from the above cases that before a recovery for emotional distress damages may be made due to a fear of contracting a disease, such as AIDS, there must first be *exposure* to the disease. If there is no exposure, then emotional distress damages will be denied.

413 S.E.2d at 893 (Emphasis in original). In this case ... [t]here is no dispute that the AIDS-infected blood of the patient came into contact with the blood of the appellee. Expert testimony on behalf of the appellant acknowledged that this case involved an exposure. This, of course, would go to the reasonableness of the appellee's fear.

*Id.*

Therefore, although the Court did employ a reasonableness standard, it made an actual exposure to the disease-causing agent an indispensable requisite of that reasonableness. The Court reinforced its holding by stating:

> We emphasize that our decision herein is not to permit recovery of emotional distress damages to anyone who comes into contact with a person who is infected with AIDS or merely believes that a person is infected with AIDS. Rather ... recovery of such damages is limited to the situation where the plaintiff is actually exposed to the AIDS virus as a result of physical injury.[12]

Other jurisdictions, however, do not require an actual exposure to the disease-causing agent to establish a prima facie case for emotional damages; these jurisdictions generally require only that the plaintiff's fear be reasonable; and the question of reasonableness is, except in the most clear-cut circumstances, one for the trier of fact.[13] The best example of this view is the Maryland Court of Appeals' decision in *Faya v. Almaraz,* 329 Md. 435, 620 A.2d 327 (1993).

In *Faya,* two women were unwittingly operated upon by an AIDS-infected surgeon. The surgeon later died of AIDS, and the women learned of his death and the cause thereof from an article in a local newspaper. The women sued the surgeon's estate and the hospital for emotional damages, alleging that they were exposed to HIV by virtue of

---

12. The West Virginia Supreme Court reaffirmed the actual exposure requirement in *Funeral Serv. by Gregory v. Bluefield Hospital,* 186 W.Va. 424, 413 S.E.2d 79 (W.Va.1991), a case decided two weeks after *Johnson.* In *Gregory,* a mortician brought an action against the hospital after he had unknowingly embalmed an AIDS-infected corpse. The trial court dismissed the claims, and the supreme court affirmed, holding, *inter alia,* that the plaintiff failed to show an actual exposure to the AIDS virus because he did not establish that any fluids from the corpse entered his body.

13. Two courts—the Arizona Court of Appeals and the United States District Court for the Northern District of Illinois—do not use either the "actual exposure" or the "reasonableness" approach. These courts utilize an "actual injury" standard: under this standard, even if an actual exposure to HIV is proven, the plaintiff must prove that he or she has tested positively for HIV antibodies in order to recover. *See Transamerica Ins. Co. v. Doe,* 173 Ariz. 112, 840 P.2d 288 (App.1992); *Poole v. Alpha Therapeutic Corp.,* 698 F.Supp. 1367 (N.D.Ill.1988). We believe that this approach overemphasizes the objective component of the prima facie case for emotional damages and that it ignores the unique nature of the AIDS disease. Moreover, this approach clearly contravenes our holding in *Laxton.*

the operations. The trial court dismissed their claims, holding that because the plaintiffs could not establish that the surgeon's blood had entered their bodies, they could not prove an actual exposure to HIV, and thus could not recover.

The Maryland Court of Appeals reversed the judgment. After discussing *Burk* and *Johnson,* the Court, relying primarily on our Court of Appeals' decision in the instant case, stated that:

> [W]e cannot say that appellants' alleged fear of acquiring AIDS was initially unreasonable as a matter of law, even though the averments of the complaints did not identify any actual channel of transmission of the AIDS virus. But *Burk's* requirement that plaintiffs must allege actual transmission would unfairly punish them for lacking the requisite information to do so.

620 A.2d at 336–37.

Maryland is the only jurisdiction in which the highest court has embraced the general rea-

sonableness standard. This standard has been utilized by trial courts in *Marchica v. Long Island R.R,* 810 F.Supp. 445 (E.D.N.Y. 1993),[14] and *Castro v. New York Life Ins. Co.,* 153 Misc.2d 1, 588 N.Y.S.2d 695 (Sup. 1991),[15] and by an intermediate appellate court in *Kerins v. Hartley,* 17 Cal.App.4th 713, 21 Cal.Rptr.2d 621 (1993).

A resolution of this issue is made more difficult by the fact that few jurisdictions that have considered this issue have set forth a detailed rationale for adopting one view over the other. The courts adhering to the "actual exposure" approach typically cite cases dealing with the fear of contracting cancer from exposure to asbestos or environmental hazards, and then state that because an actual exposure always occurred in those cases, it must be required in the context of AIDS. *See e.g., Burk, supra.* This analysis is somewhat unsatisfying because of the unique deadliness of AIDS, and the fact that HIV can remain latent for many years before

---

**14.** *Marchica* involved a claim for emotional damages brought under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. In discussing whether a claim for emotional damages was permissible under FELA, the court first noted that FELA employs a much more relaxed standard of negligence than that found in ordinary negligence actions. The court then distinguished the *Burk* decision solely on the fact that *Burk* was not brought under FELA. Because the FELA standards are so different from state tort law standards, the precedential value of *Marchica* is very limited.

**15.** *Castro* involved an action brought by a janitorial employee after she was stuck by a discarded hypodermic needle and syringe as she was attempting to empty a trash can. Although the plaintiff refused to reveal the results of her HIV test to the defendant, the trial court denied the defendant's motion for summary judgment, stating that because the "claim [could] be tied to a distinct event which could cause a reasonable person to develop a fear of contracting a disease like AIDS, there is a genuineness of the claim." 588 N.Y.S.2d at 697. *Castro,* however, may be an aberration in New York law. Several New York cases, including *Ordway v. County of Suffolk,* 154 Misc.2d 269, 583 N.Y.S.2d 1014 (Sup. 1992), *Hare v. State,* 173 A.D.2d 523, 570 N.Y.S.2d 125 (1991), and *Doe v. Doe,* 136 Misc.2d 1015, 519 N.Y.S.2d 595 (Sup.1987), appear to require an actual exposure to the disease-causing agent to establish a prima facie case for

emotional damages. In *Ordway,* a surgeon brought an action for emotional damages for his fear of contracting AIDS after he unknowingly operated upon an AIDS-infected patient. The trial court dismissed the action, noting that there was no "broken glove, pierced skin, patient bite, etc., which distinguishes the operations in question from any other." 583 N.Y.S.2d at 1016–17. In *Hare,* an X-ray technician was bitten by an inmate, and a nurse on the scene informed the technician that the inmate might be infected with AIDS. The appellate court affirmed the trial court's dismissal of the technician's suit for emotional damages, stating that there was no evidence that the patient was actually infected with AIDS, and that the technician tested negatively for AIDS. In *Doe,* a wife sued her husband for divorce; she also brought a claim for emotional damages based on her fear of contracting AIDS, because, she alleged, the husband had been engaged in an extramarital affair and might have transmitted the disease to her. The trial court dismissed the claim, stating that the plaintiff did not even allege that the husband has the "condition or virus on which she bases her claim." 519 N.Y.S.2d at 598. The court then stated somewhat acridly that "[i]f this cause of action were permitted to continue, any party to a matrimonial action who alleged adultery would now have a separate tort action for damages for 'AIDS-phobia' because unfortunately in this day and age any deviation from the marital nest could possibly result in exposure to AIDS." *Id.*

appearing.[16]

The courts adhering to the opposite view usually simply state that, given the nature of AIDS, and the widespread publicity associated with the disease, the question of the reasonableness of the plaintiff's fear must be decided by the jury, not by the trial judge. These courts usually cite the liberalization of the law concerning negligent infliction of emotional distress, especially the relaxation of the traditional physical injury requirement, to buttress their conclusions. *See e.g., Faya, supra.*

The latter view has, in our opinion, several major shortcomings. First, it treats the reasonableness question in the context of negligence actions for emotional damages in the same manner as the question of reasonableness in other areas of negligence law. This equation is problematic because although the common law of negligence has not traditionally been reluctant to allow juries to assess reasonableness in other contexts (for example, juries commonly decide whether the defendant's actions were reasonable in the breach of duty and proximate causation elements of a garden-variety negligence action), the law has been reticent to allow juries to award damages based only on mental or emotional trauma because of the inherently subjective nature of these claims and the concomitant inability of trial courts to give adequate instructions to channel the jury's discretion in these cases.[17]

A related, but more specific problem with the reasonableness standard is that it removes the objective component that has long been deemed necessary to establish a prima facie case of negligent infliction of emotional distress. Under the older law, a plaintiff was required to show that he or she had sustained a distinct physical injury before being allowed to recover for emotional or mental injuries. *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270 (1966); *Memphis St. R.R. Co. v. Bernstein,* 137 Tenn. 637, 194 S.W. 902 (1917); *Colsher v. Tenn. Elec. Power Co.,* 19 Tenn.App. 166, 84 S.W.2d 117 (Tenn.App.1935). The physical injury requirement served to objectify the inquiry; it assured that the plaintiff's allegations of emotional injury were grounded in an independently verifiable event. Although the degree of physical injury required to substantiate the plaintiff's emotional damages claim was not always consistent, and was sometimes quite negligible,[18] the requirement nevertheless remained central to this area of negligence law.

It is certainly true that the physical injury requirement has been gradually weakened so that a minimal physical injury will now suffice. *See e.g., Laxton,* at 433–34. This shift in the law, however, does not signal an abandonment of the objectivizing function served by the physical injury requirement, but is rather a product of the realization that the physical injury requirement no longer properly serves that function in many modern actions for emotional damages. Many actions for emotional damages brought today are radically different from the cases which gave rise to the requirement in that they involve an exposure to an extremely dangerous agent—such as asbestos,[19] dioxin,[20] or

**16.** The latter factor would be more troubling if not for the existence of reputable studies which conclude that while HIV can theoretically remain dormant for long periods of time, 95% of HIV carriers will test positively within six months of the exposure to the virus. *See* Morbidity and Mortality Weekly Report, July 21, 1989.

**17.** Although the authority of juries to determine factual questions has been, and will continue to be, one of the hallmarks of our legal system, courts have always endeavored to provide meaningful standards to guide and channel the discretion of juries. In fact, the whole body of evidence law may be characterized as a means of limiting the discretion of the jury.

**18.** The cases cited in Laxton—*Ford v. Roddy Mfg. Co.,* 60 Tenn.App. 495, 448 S.W.2d 433 (1969), *Jones v. Mercer Pie Co.,* 187 Tenn. 322, 214 S.W.2d 46 (1948), *Roddy Mfg. Co. v. Cox,* 7 Tenn.App. 147 (1927), and *Boyd v. Coca Cola Bottling Works,* 132 Tenn. 23, 177 S.W. 80 (1914)—are good examples of the minimal level of physical injury needed to establish a prima facie case.

**19.** *See, e.g., Wisniewski v. Johns–Manville Corp.,* 759 F.2d 271 (3d Cir.1985); *In re Hawaii Federal Asbestos Cases,* 734 F.Supp. 1563 (D.Ha.1990); *Delvin v. Johns–Manville Corp.,* 202 N.J.Super. 556, 495 A.2d 495 (1985).

**20.** *See, e.g., Anderson v. W.R. Grace & Co.,* 628 F.Supp. 1219 (D.Mass.1986).

HIV—which may have serious adverse health consequences at some point far into the future. Given this fact, this Court has realized that in some situations, whether the plaintiff has incurred a literal physical injury has little to do with whether the emotional damages complained of are reasonable. This realization was evident in *Laxton*, where we were able to discount the fact that the plaintiffs had not suffered a classic physical injury, and to substitute as the required objective component of the prima facie case the plaintiffs' direct exposure to the carcinogenic chemical. The same can be said of the Court of Appeals' analysis in *Gamble*; the Court did not require evidence of a physical injury because the plaintiff's fetus had been directly exposed to a potentially dangerous agent. The Sixth Circuit Court of Appeals utilized the same type of analysis in *Velsicol*: although the Court did say that an "existent injury" was necessary in order to recover emotional damages, it is clear that this "existent injury" requirement was satisfied because the plaintiffs actually ingested the defendant's hazardous chemicals.

Because recent caselaw illustrates that we have never deviated from an objective standard for negligent infliction of emotional distress claims, but have merely employed a different type of objective standard because of the changed nature of the actions, we hereby formally adopt the "actual exposure" approach. In order to recover emotional damages based on the fear of contracting AIDS, the plaintiff must prove, at a minimum, that he or she was actually exposed to HIV. And even assuming that the plaintiff was actually exposed to HIV, liability will attach only to the extent that the resulting emotional distress was within the range of that experienced by an ordinary, reasonable person under the circumstances. Moreover, any damages recoverable for emotional distress will be "confined to the time between discovery of the [exposure] and the negative medical diagnosis or other information that puts to rest the fear of injury." *Laxton, supra*, at 434.

Because Carroll has tested negatively for the presence of HIV antibodies and has admitted that she cannot prove that the nee-

dles which pricked her were contaminated with HIV, her claim is therefore insufficient as a matter of law. The judgment of the Court of Appeals is hereby reversed, and the cause remanded for further proceedings in accordance with this opinion.

REID, C.J., and O'BRIEN and ANDERSON, JJ., concur.