JERRY BAIN and wife SUE BAIN, )
            )
   Plaintiffs/Appellees,  )
            )
            )  Wilson Circuit
            )  No. 8487
VS.          )
            )  Appeal No.
            )  01-A-01-9503-CV-00120
DR. WAYNE WELLS,    )
            )
   Defendant,    )
            )
NATIONAL MEDICAL ENTERPRISES, )
INC., NEW BEGINNINGS CENTER, )
UNIVERSITY MEDICAL CENTER AND )
NATIONAL RECOVERY CENTERS OF )
AMERICA,        )
            )
   Defendants/Appellants. )

**FILED**

**Nov. 29, 1995**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

IN THE COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CIRCUIT COURT OF WILSON COUNTY

AT LEBANON, TENNESSEE

HONORABLE BOBBY CAPERS, JUDGE

HENRY CLAY BARRY
106 S. College St.
Lebanon, Tennessee 37087
ATTORNEY FOR PLAINTIFFS/APPELLEES

MOODY, WHITFIELD & CASTELLARIN
William C. Moody
95 White Bridge Road
Suite 509
Nashville, Tennessee 37205
ATTORNEY FOR DEFENDANTS/APPELLANTS

AFFIRMED AND REMANDED

         HENRY F. TODD
         PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
SAMUEL L. LEWIS, JUDGE
BEN H. CANTRELL, JUDGE

| JERRY BAIN and wife SUE BAIN, | ) | |
|---|---|---|
| | ) | |
| Plaintiffs/Appellees, | ) | |
| | ) | |
| | ) | Wilson Circuit |
| | ) | No. 8487 |
| VS. | ) | |
| | ) | Appeal No. |
| | ) | 01-A-01-9503-CV-00120 |
| DR. WAYNE WELLS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| NATIONAL MEDICAL ENTERPRISES, | ) | |
| INC., NEW BEGINNINGS CENTER, | ) | |
| UNIVERSITY MEDICAL CENTER AND | ) | |
| NATIONAL RECOVERY CENTERS OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendants/Appellants. | ) | |

O P I N I O N

The captioned defendant, Dr. Wayne Wells, was dismissed by nonsuit and is not involved in this appeal. The remaining defendants have been granted interlocutory appeal from the order of the Trial Judge overruling their motion for summary judgment.

In respect to the appellants, the complaint alleged:

> . . . .
>
> II. That the corporate defendants are for-profit corporations doing business in Wilson County, Tennessee, under their corporate names or as D/B/As heretofore listed as defendants.
> . . .
>
> . . . .
>
> IV. That the defendants have a policy of not isolating patients that they know are positive for the HIV virus in private rooms or only putting them with other similarly infected patients, and further, the policy of the defendants is to not inform the roommates of such persons, which the defendants know have tested positive for HIV virus, of that fact. This policy deprives the non-HIV infected patients of the defendants of making a choice as to whether or not to [be] placed in that environment. These policies constitute outrageous conduct toward the person or persons sharing a room with someone infected with the HIV virus when the fact is known to the hospital and not disclosed to the roommate. These policies further constitute Intentional

Infliction of Emotional Distress upon the patients, and the spouses and family of the patients, who the hospital causes to live with and be roommates of patients, known to the hospital to be infected with HIV virus without informing them. The emotional distress suffered by patients and their families as a direct and proximate result of these policies is not only foreseeable, but the assured consequence of the policies.

V. That on the 17th day of September, 1991, the plaintiff, Jerry Bain was admitted as an in-patient by the defendant, Dr. Wayne Wells, into the New Beginnings Center, which is an alcohol and drug rehabilitation center on the property of University Medical Center, in Lebanon, Tennessee, and operated by the University Medical Center and National Recovery Centers of America, University Medical Center and National Recovery Centers of America being operated by the defendant, National Medical Enterprises, Inc., for a course of treatment for an alcohol problem.

The plaintiff was admitted to the aforesaid hospital or rehabilitation center in Lebanon, Tennessee, and remained there in treatment until October 1, 1991, when he left treatment without completing the program. On October 4, 1991, the plaintiff returned to the said hospital or rehabilitation center to complete the program and remained there until October 8, 1991, then having completed the program provided by the defendants, he was discharged.

VI. That during the plaintiff's aforesaid hospitalization, the defendants, individually or through its or his agents and/or employees placed a roommate with the plaintiff, who they had been informed or knew, had tested positive for the HIV virus or they should have known was positive for the HIV virus without telling the plaintiff pursuant to the policy of the defendants. The plaintiff occupied the same room with this HIV infected person for approximately 8 days, shared bathroom facilities with him and on one occasion used his razor to shave with mistaking it for his own.

VII. That by the facts heretofore set out the defendants knowingly, maliciously and willfully and/or negligently and recklessly exposed the plaintiff, Jerry Bain to an infectious disease of the HIV virus without informing the plaintiff, Jerry Bain of this risk.

VIII. That these facts are compounded by the fact that the plaintiff, Jerry Bain had an open cut on his buttock at the time and roommates in the facility share toilet facilities.

IX. That the aforesaid actions of the defendants individually or through their agents and or employees constitutes a deviation from the standard of care in the community and as a direct and proximate result of that deviation, the plaintiffs have been damaged as heretofore set out.

X. That for the foregoing reasons the plaintiff Jerry Bain has suffered great worry and emotional distress which was

reasonably foreseeable to the defendants who are each in the business of health care, as a direct and proximate result of their actions and policies heretofore set out. The plaintiff would assert that he has suffered monetary damages in being tested for the HIV virus, and in treatment for the emotional distress caused by his exposure to this virus, in addition to the emotional distress itself suffered by the plaintiff and his wife all as a direct and proximate result of the policies and actions of the defendants, which are all health care providers heretofore set out.

XI. That as a direct and proximate result of the aforealledged policies and actions of the defendants, the plaintiff and his wife fear they may be infected with the HIV virus.

XII. That as a direct and proximate result of the defendants' actions, policies and omissions heretofore set out, the plaintiffs' normal marital life has been compromised and each make a claim for loss of consortium.

The complaint prayed for compensatory and punitive damages.

In their answers, defendants denied that they endangered the patient, Bain, or that they deviated from the acceptable standard of care.

The corporate defendants moved to dismiss for failure to state a claim for which relief can be granted.

On July 13, 1993, the remaining (corporate) defendants moved for summary judgment supported by affidavit of Dr. William Schaffner, II that:

> In conjunction with this matter, I have reviewed Jerry Bain's deposition and a portion of his medical records at the University Medical Center consisting of the admission records, the history and physical examinations and a dermatology consultation. Based on my review of these materials and my education and experience, Jerry Bain did not suffer exposure to HIV and, a person experiencing circumstances set out in the materials I had reviewed would have no reasonable fear of contracting HIV.
>
> I am familiar with numerous studies of persons with AIDS, their living circumstances, and the health of persons sharing their household. The only persons in any of these studies who shared a household with an AIDS victim who became infected himself were either sex partners or offspring of the AIDS

victims. It is my opinion that one could not contract the AIDS virus by sharing a toilet seat or disposable razor with a person in the circumstances set out in the plaintiff's deposition.

It is further my opinion that following an exposure to HIV, after three months of negative testing, that person would be reasonably sure of not being infected with HIV.

The technical panel of infections within hospitals of the American Hospital Association published recommendations entitled "Management of HIV Infection in the Hospital," revised in November, 1988. In regards to hospital inpatients infected with HIV, the panel recommended that a private room is usually not necessary for patients with HIV infection. I am familiar with the standard of care required of hospitals such as the University Medical Center in regards to the room placements of patients with HIV infections. That standard does not require that such patients be segregated unless the HIV infected patient has other infections such as those transmitted by the airborne route, is violent, or is so ill with AIDS that he is unable to control his body fluids. Therefore, it is my opinion that the University Medical Center complied with the applicable standard of care by not segregating Jerry Bain's roommate by placing him in a private room.

In response, the plaintiffs filed the affidavit of the plaintiff, Jerry Bain, that:

A. I was admitted to New Beginnings Center which, to the best of my knowledge, information and belief, is operated by National Recovery Centers of American and University Medical Center which are wholly-owned subsidiaries of National Medical Enterprises, Inc.

B. That my admittance was for the purpose of helping me with an alcohol problem and was for a 28 day course of treatment.

C. That during the course of my treatment, the defendants, their agents and employees, placed with me, a roommate who was positive for HIV virus without informing me of that fact and I was informed, by that person, my former roommate, who is now deceased, that he was not to tell me either of the fact that he was infected with HIV virus.

D. That during the course of my treatment, the defendants, their agents and employees, never informed me of the fact that I should regard everyone whom I came in contact with as being infected with serious, life-threatening disorders and to take appropriate measures not to use their instruments of personal hygiene.

E. That I am informed by the defendant's agents and employees, after I discovered that my roommate was positive for HIV, that the defendants have a policy not to discriminate against people who are positive for HIV virus and to place them in rooms with persons who are not positive for HIV without telling the non-infected person of the potential risk.

F. That there were no signs posted on the doors indicating that special precautions should be taken in regard to my roommate.

G. That one morning, while I was a resident at this health care facility, I mistakenly used my roommate's razor to shave with, which he had previously used that morning. When I discovered my mistake, I wasn't overly concerned until I discovered that he was positive for HIV.

H. That in the normal course of shaving, I usually attempt to shave very closely and normally cut or scrape myself several times.

. . . .

J. That after discovering the fact that my roommate was infected with the HIV virus, and knowing the fact that I had inadvertently used his razor, I have been suffering from emotional distress of knowing that I might possibly be infected with this deadly disorder and that I might have, in turn, infected my wife and child.

K. That it is common knowledge that not all means of transmission of HIV virus have yet been discovered and that it can take up to ten years from the time of contact with the virus until it can be detected in a person's system.

L. That I have had several HIV tests conducted on my person which have to date been negative, but in having the tests conducted on me, I have incurred medical expense.

M. That I recently heard on the television about an HIV case where the virus can [be] contracted through the use of a razor which was previously used by a person with HIV and this has caused me further concern and worry.

On June 6, 1994, the Trial Court overruled defendants' motion "insofar as it is based upon plaintiffs' lack of an exposure to the HIV."

On September 7, 1994, plaintiffs filed the affidavit of Wayne Winfree; Administrator of the Carthage General Hospital that:

2. That it is the standard of care at our hospital to place patients with life threatening, contagious disorders in a private room or another room without another patient. HIV is not specifically defined in our policy as one of these disorders.

On September 14, 1994, the Trial Judge entered the following order:

> This cause having come to be heard on September 1, 1994
> upon the motion of the defendant for summary judgment and
> the Court having considered the motion with the supporting
> affidavit of Dr. William Schaffner and the affidavit of Wayne
> Winfree and it appearing to the Court that the motion should be
> overruled,
> It is, hereby, ordered that the defendants' motion for summary
> judgment is overruled.

On March 23, 1995, the Trial Court entered an "Agreed Order" granting a Rule 9

appeal from the order of September 13, 1994, for the following reasons:

> The plaintiff was an inpatient in a alcohol treatment program
> at the University Medical Center when he shared a room with a
> person suffering from AIDS. The fact that his roommate
> suffered from AIDS was undisclosed to him. The plaintiff's
> complaint arose from his alleged exposure to HIV as a result of
> his inadvertent use of his roommate's razor when they were
> sharing a room and bath facilities at University Medical Center.

> The sensitive nature of the subject matter from which this suit
> arises could result in irreparable harm to the parties and other
> persons if this action goes to trial. First, there could [be]
> publicity embarrassing to the plaintiff and his family as a result
> of his alleged exposure to the HIV virus. Second, there could
> be publicity embarrassing to the family of the now deceased
> roommate, due to his having suffered from AIDS. Third, there
> could be publicity harmful and embarrassing to the reputation
> of the hospital in the community due to the fact that it places
> persons known to the hospital to be suffering with AIDS in
> rooms with persons uninfected with that disorder without
> informing the uninfected party.

> In the event the Court of Appeals reverses this trial court's
> order denying the defendant's motion for summary judgment,
> the potentially embarrassing and negative publicity to the
> parties and other persons would have been unnecessary.
> Therefore, to prevent the potential of negative and
> embarrassing publicity to the parties and other persons, the
> Court is of the opinion that an interlocutory appeal should lie
> regarding the Court's denial of the defendants' motion for
> summary judgment.

> This action involves a developing and complex field of law
> with little precedent from the appellate courts of this state.
> Therefore, it is the opinion of the court that an interlocutory
> appeal which might result in a reversal of the court's denial of
> summary has a potential of preventing needless expensive and
> protracted litigation.

On appeal, defendants present three issues, of which the first is:

1. Whether the record contains genuine issues of material fact concerning whether the defendants' policy of housing HIV positive patients with non-HIV positive patients was consistent with standard medical practice.

The nature of proof required regarding a standard of medical practice is outlined in T.C.A. 29-26-115. In a malpractice action, the plaintiff has the burden of proving by competent evidence the recognized standard of acceptable professional practice in the defendant's profession and speciality thereof and that the defendant acted with less than ordinary and reasonable care in accordance with such standard.

Where the alleged malpractice lies within the common knowledge of a layman, expert testimony is not required. *Baldwin v. Knight,* Tenn. 1978, 569 S.W.2d 450.

It can hardly be said that the common knowledge of laymen includes the proper standard of care in respect to the assignment to the same health care room of a person infected with HIV and a person not so infected or the concealment from a patient the fact that his roommate is infected with HIV.

As above indicated, the defendants produced the testimony of a medical authority that the conduct of defendants conformed to the "applicable standard of care" by not segregating Jerry Bain's roommate by placing him in a private room." The plaintiffs responded with an affidavit of a hospital administrator of the standard of care at his hospital. This does not identify a general standard of care which would contradict the testimony of defendants' witness. Thus, the uncontradicted evidence in this record shows that defendants did not violate the recognized standard of acceptable medical practice by placing a patient infected with HIV in the room with Mr. Bain.

However, the affidavit offered by defendants refers only to the placing of two patients in the same room; whereas the complaint also alleges that Mr. Bain was placed in a room with an HIV patient secretly, that is, without disclosing to Mr. Bain that his roommate was infected by HIV.

As to this second complaint, there is no evidence of standard of care except uncontradicted evidence that the defendants operate under certification to provide Medicare and Medicaid benefits which obligates them to observe 42 U.S.C.A. § 290-dd-3. Said statute forbids the disclosure of medical records of patients except under circumstances not shown in this record.

While the statute may excuse the failure to disclose the condition of a patient, it does not necessarily justify placing the infected individual in a room without disclosing the infection to the roommate. If the disclosure cannot be lawfully made, the placement of the patient with another patient may be wrongful. The record is silent on the issue of whether the recognized standard of acceptable care permits the placing of an HIV infected patient in the room with an uninfected patient without warning the uninfected patient.

The first ground of recovery (placing the infected patient in the room with another patient) may be subject to a summary judgment under this record; but the second ground (concealment of infection accompanied by assignment to a room) is not subject to a summary judgment under this record.

The two alleged wrongs (placement and concealment) are so inextricably interconnected that they should be dealt with as a unit and not dismissed piecemeal. The distinction is better pointed out in a jury charge.

Appellants' second issue is:

> 2. Whether the plaintiff's response to the motion for summary judgment demonstrates that he will be able to prove all the elements of his outrageous conduct claim.

This issue presupposes that, in response to the motion for summary judgment, plaintiffs were under a duty to demonstrate evidence to support the allegation of outrageous conduct.

A defendant is not entitled to summary judgment merely because the plaintiff failed to support every element of his case with evidence, but because plaintiff has failed to contradict evidence which, if uncontradicted, entitles defendant to judgment as a matter of law. *Armes v. Hulett,* Tenn. App. 1992, 843 S.W.2d 427.

In other words, a plaintiff has no obligation to prove his case on summary judgment. His obligation is only to contradict evidence offered by defendant.

The first requisite of "outrageous conduct" is that the conduct be wrongful, *i.e.* a violation of some duty. Conduct must first be wrongful before it can be outrageous.

Wrongful conduct may or may not be outrageous, but conduct may not be outrageous unless it is first wrongful.

In the present case, plaintiffs charge outrageous conduct in two respects: (1) placing an HIV infected patient in the room with a noninfected patient, and (2) hiding from the noninfected patient the infection of his roommate.

Defendants have produced evidence that placing the infected patient in the room with an uninfected patient was not wrongful. Plaintiffs have offered no competent contradiction of defendants' evidence. Therefore, defendants are entitled to a partial summary judgment

dismissing plaintiffs' suit for outrageous conduct based upon defendants wrongfully placing an infected patient in the room with a noninfected patient.

The situation is otherwise with the second charge of concealing the infection of the roommate. Defendants have offered no evidence that this was not wrongful and are therefore not entitled to summary judgment on this part of the case. In the present state of the record, plaintiff is entitled to trial on the merits of the second allegation.

If such allegation reaches trial, the charge of "outrageous conduct" will present a material issue because it appears that plaintiff sustained no pecuniary damage except expense of tests and no physical injury or pain except that which was incident to the tests. In short, the predominant gravamen of the lawsuit is "emotional injury and suffering from outrageous conduct."

If concealment of the infection is shown to be wrongful, then it will be in order to consider whether it was "outrageous conduct," supporting damages for emotional distress without physical injury.

The Tennessee Supreme Court has recognized the tort of outrageous conduct and has defined its two essential elements. *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 479, 398 S.W.2d 270, 274 (1966). The first element is that the defendant's conduct be outrageous, *i.e.*, "not tolerated in civilized society." *Id.* The second element is that the plaintiff suffer "serious mental injury." Note that it is not necessary for the plaintiff to show actual physical harm. *Id.*

Defendants' motion for summary judgment failed to assert that plaintiffs will be unable to show that Mr. Bain suffered severe emotional distress or that Mr. Bain did not

suffer severe emotional distress as a result of the incident. Because defendants did not

provide

uncontradicted evidence as to this issue, it should proceed to trial. *Armes v. Hulett,* Tenn.

App. 1992, 843 S.W.2d 427, 429.


Defendants' third, and last issue is:

> 3. Whether the plaintiff's response to the motion for summary judgment demonstrates that he will be able to prove that he was actually exposed to the human immunodeficiency virus during his hospitalization at the facility.


Defendants did not contend that plaintiffs needed to prove actual physical harm in

order to establish negligent infliction of emotional distress. Instead, defendants correctly

stated that plaintiffs only needed to prove actual exposure. *Carroll v. Sisters of Saint Francis

Health Servs., Inc.,* Tenn. 1978, 868 S.W.2d 585, 594.


Wherein the plaintiff sued for negligent infliction of emotional distress based upon

the maintenance of a container for discarded hypodermic needles which plaintiff mistook for

a paper towel container. In attempting to secure a towel, plaintiff inserted her hand into the

container and pricked three of her fingers on needles. The plaintiff admitted that she could

not prove that the needle that pricked her finger was contaminated with HIV virus as feared

by her. The Supreme Court held that plaintiff could not recover for emotional distress from

fear of HIV without presenting evidence that she was actually exposed to HIV.


The court's decision in *Carroll* was very narrow, but in reaching its conclusion, the

court analyzed the progression of the law in Tennessee. After discussing some recent

opinions, the court noted that "[u]nder the older law, a plaintiff was required to show that he

or she had sustained a distinct physical injury before being allowed to recover for emotional

or mental injuries." *Id.* at 593. The court then went on to explain that the reason for

requiring a physical injury was to objectify the inquiry, *i.e.,* to ensure that the plaintiff's

emotional injury was well-grounded. *Id.* Addressing the current state of the law, the court pointed out that the "physical injury requirement has been gradually weakened so that a minimal physical injury will now suffice." *Id.* In a precautionary tone, the court went on to explain that "[t]his shift in the law . . . does not signal an abandonment of the objectivizing function served by the physical injury requirement, but is rather a product of the realization that the physical injury requirement no longer properly serves that function in many modern actions for emotional damages."

Finally, the court applied the above law to the facts. It concluded that *Carroll* was one of those "modern actions" in which the physical injury requirement failed to serve its function. Instead, the court employed an "actual exposure" requirement. As a result, the court denied Carroll's request for damages because she could not prove that the needles, which pricked her fingers, were contaminated with HIV. *Id.* at 594. In the present case, in order for the defendants to prevail on summary judgment, they must provide the court with uncontradicted evidence that there was no actual exposure. That is, that no exposure occurred through contact with the razor or use of toilet facilities.

Under the rule of law already cited, in order to be entitled to a summary judgment on the ground that Mr. Bain was not exposed to HIV virus, the defendants were obligated to show by uncontradicted and unequivocal evidence that he was not so exposed. The uncontradicted and unequivocal evidence is that he was not exposed merely by the presence of the infected patient in his room.

However, the complaint, quoted above, stated that he used his roommate's razor and used the same toilet with a cut on his buttock. This raises the issue of whether Mr. Bain was exposed to HIV virus by use of the razor or use of the toilet. The defendants have failed to carry their burden of proving by uncontradicted and unequivocal evidence that Mr. Bain was not exposed to HIV virus by use of the razor or toilet facilities.

The deposition of defendant's expert includes the following:

> Q. If a person was positive for HIV had used a razor to shave with, that razor should be considered as containing the disorder should it not --
>
> . . . .
>
> A. The -- Absent bleeding, the short answer is no.
>
> Q. If bleeding is unknown?
>
> A. Well, if one -- I mean, if bleeding occurs you see blood on the razor. If there's blood on the razor, regardless of its source, the razor is considered a -- I don't want to use the word contaminated, because razors are always contaminated. They're never considered -- they're never considered sterile, but if a person shaves with a razor and doesn't cut themselves and the razor doesn't get covered with blood, there's no hazard to the next person, regardless of what the first person's status is, whether infected or not.
>
> I can't get infected by shaking your hand, if you're infected. I mean, we've established that that is not the way this virus is transmitted. It is a difficult virus to transmit. You have to have blood to blood contact. So the simple use of a razor does not mean that virus is on the razor and capable of being transmitted to a subsequent user.

There is uncontroverted evidence that, if there is no infected blood on the razor, or toilet, it cannot transmit HIV. However, the record is silent as to whether there was blood on the razor or toilet when Mr. Bain used it. In order to supply the uncontradicted, unequivocal evidence that Mr. Bain was _not_ exposed to HIV by use of the razor or toilet, the defendants had the burden of proving that there was no blood of the roommate on the razor or toilet when Mr. Bain used them.

It may be that neither party will be able to prove that there was blood on the razor or toilet. The owner of the razor will not be able to testify because he is dead. Further, plaintiffs admit that Mr. Bain does not remember whether there was blood on the razor. Plaintiffs state the following in their brief: "The reason these facts are impossible to recall is

-14-

that the appellee did not become anxious about it until days later, when he discovered his roommate was positive for HIV." Nevertheless, in a jury trial, it is the role of the jury to weigh the evidence and to decide whether the plaintiffs have established actual exposure by a preponderance of the evidence.

Although Mr. Bain admitted that subsequent tests for HIV were negative, there is no evidence that this fact establishes non-exposure.

In summary, this is a suit for negligence and outrageous conduct based upon two alleged wrongful acts, (1) placing an infected patient in the room with Mr. Bain, and (2) hiding from Mr. Bain the fact that his roommate was infected.

The placing of the infected patient in the room has been shown to be _not_ wrongful by uncontradicted and unequivocal evidence.

The placing of an infected patient without warning the roommate may be wrongful. The wrongful character of hiding of the infected condition of the roommate and the lack of exposure to the virus HIV by use of a razor have not been negatived by uncontradicted and unequivocal evidence, and therefore remain as issues for future resolution.

As heretofore stated, the two grounds of complaint are too interconnected to be separated by summary judgment, and their consideration will be most efficiently guided by jury instruction.

With the reservations stated, the judgment of the Trial Court overruling the motion of defendants for summary judgment is affirmed. Costs of this appeal are taxed against the appellants. The cause is remanded for further proceedings.

Affirmed and Remanded.

_____

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION


CONCUR:


_____

SAMUEL L. LEWIS, JUDGE


_____

BEN H. CANTRELL, JUDGE